[No. 2817-3. Division Three. June 14, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
C. SAINZ, *Appellant*.

*Charles H. Barr,* for appellant.

*Curtis Ludwig, Prosecuting Attorney,* and *William A. Bartlett, Deputy,* for respondent.

ROE, J.—On October 1, 1977, Detective Donald Smith filed an affidavit for a warrant to search a house in Kennewick for contraband and illegal weapons. In part the affidavit stated:

Affiant's belief is based on information received by the Benton County Sheriff's Department from a confidential informant who stated that Rick and Robert Trinidad were selling heroin, cocaine and other controlled substances at said premises and that said informant had purchased drugs from them on numerouse [sic] occassions [sic]. The informant had been to said premises on Bowles Road, Route #2 Box 2299, Kennewick, Washington, within the past 8 days in connection with an illegal drug transaction and while there saw a thompson [sic] sub machine gun and a sawed off shotgun. That the informant has had prior criminal involvement and the information provided is detrimental to his interest.

There is no motive or purpose for said informant to provide false information and the information furnished can be to informant's advantage only if truthful and to informant's disadvantage if false.

After reviewing the affidavit and receiving testimony under oath from the unnamed informant, the magistrate determined that probable cause existed to issue the warrant.

When the warrant was executed, several officers secured the back door of the residence; Undersheriff Rawlings and Detective Johnson, both in plain clothes, approached the front door, knocked, and announced their purpose. Tanya Ramirez, a guest in the house, opened the door and held it ajar. Presenting his badge, Rawlings pushed the door open, nudged Ramirez with his shoulder and directed her to sit

534

on the couch. In the ensuing search, methamphetamine, phenobarbital and defendant Robert Sainz were found in a back bedroom. Following a jury trial, Sainz was convicted of unlawful possession of controlled substances in violation of RCW 69.50.401(c).[1]

Sainz challenges the search warrant on two grounds: first, he contends that the affidavit in support of the warrant contained insufficient information by which to judge the unnamed informant's reliability. Second, Sainz argues that the affidavit failed to establish the contemporaneous presence of the contraband on the searched premises.

■■ Reasonableness is the key in testing the validity of a search warrant. The Supreme Court translated the constitutional requirement of reasonableness, or probable cause, into the "two–prong" *Aguilar–Spinelli* test:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable."

(Citation and footnote omitted.) *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509, 1514 (1964). *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

The purpose of the test is to ensure that a warrant will issue only under the judicial sanction of a neutral and detached magistrate, and not merely on the word of a

---

[1]RCW 69.50.401(c):

"It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter. Any person who violates this subsection is guilty of a crime, and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both, except as provided for in subsection (d) of this section."

police officer "'engaged in the often competitive enterprise of ferreting out crime,' . . . or . . . by an unidentified informant." (Citations omitted.) *Aguilar v. Texas, supra* at 115. Ultimately, the issuance of a search warrant is a matter of judicial discretion, *State v. Patterson*, 83 Wn.2d 49, 515 P.2d 496 (1973), and that discretion is entitled to great deference on review. *Spinelli v. United States, supra; State v. Withers*, 8 Wn. App. 123, 504 P.2d 1151 (1972).

In addition to the allegations of reliability in the affidavit, the unnamed informant, whose information formed the basis of the warrant, also appeared in person and gave supporting testimony under oath before the issuing magistrate. Although no record of this cumulative testimony was presented on appeal,[2] the search warrant reflects the determination by the magistrate that the informant's report was truthful:

> [A]nd the undersigned Judge having heard testimony under oath from affiant's unnamed informant that said informant had been to the above described residence within the past 8 days in connection with an illegal drug transaction and while there saw a Thompson sub machine gun and a sawed off shotgun; and on the basis of said affidavit and testimony, there is probable cause to believe that said contraband is presently located at the above described premises . . .

 In oral argument, counsel referred to *State v. Welsh*, 371 So. 2d 1314 (La. 1979). There, the Louisiana Supreme Court held that an informant's willingness to testify in court may be considered in evaluating his reliability as alleged in a search warrant affidavit. The court relied on *McNeill v. Commonwealth*, 213 Va. 200, 191 S.E.2d 1 (1972), and adopted the following language from that opinion:

> It is true, as the defendant argues, that the allegation that the informer was "willing to testify in court" did not

---

[2]Possibly, no record or summary was made of the informant's sworn testimony; however, as the issue was not raised or argued in the briefs, we are not concerned with a possible violation of JCrR 2.10(c).

bind him to testify. But the average citizen knows that when he does appear in court he must take an oath to tell the truth, he faces a charge of perjury for testifying falsely, and he may be confronted with prior inconsistent statements when cross–examined. With this beforehand knowledge, when one expresses a willingness to testify in court and stand by what he has told the police, an aura of credibility is added to his story which establishes its probability.

*McNeill v. Commonwealth, supra* at 203.

If willingness to testify bolsters an informer's credibility, then a fortiori, his actual appearance before the issuing magistrate and testimony under oath provides an even stronger basis on which to appraise reliability.

In his second challenge to the affidavit, Sainz argues not that the information was "stale," but that it failed to establish that the items sought were in fact at the premises to be searched on the day the warrant was requested.

An affidavit supporting a search warrant must be sufficiently comprehensive to provide the issuing magistrate with facts from which he can independently conclude there is probable cause to believe the items sought are at the location to be searched. . . . Further, these facts must be current facts, not remote in point of time, and sufficient to justify a conclusion by the magistrate that the property sought is probably on the person or premises to be searched *at the time* the warrant is issued.

(Citations omitted.) *State v. Spencer,* 9 Wn. App. 95, 96–97, 510 P.2d 833 (1973); *State v. Johnson,* 17 Wn. App. 153, 561 P.2d 701 (1977). (Information 4 months old held not too remote.)

■ The defendant's argument must fail. The affidavit alleges that the informant had recently been to the premises, participated there in a drug transaction, and while there saw illegal weapons. This information is sufficient to enable a magistrate to conclude, as the magistrate did below, that the seized evidence was at the address stated in the affidavit. Facts in support of a warrant need not prove criminal activity but merely establish probable cause to

believe it may have occurred, *State v. Patterson, supra,* and,

> magistrates issuing a search warrant may draw common-sense inferences from the facts and circumstances contained in a supporting affidavit, and their determinations of probable cause will be treated with deference by reviewing courts.

*State v. Harris,* 12 Wn. App. 481, 485, 530 P.2d 646 (1975).

Sainz also contends that the seized evidence should have been suppressed because Officers Rawlings and Johnson failed to comply with the "knock and announce" rule of RCW 10.31.040 prior to their "forcible entry."

Absent exigent circumstances, a lawful entry to arrest or search is conditioned upon announcement of identity and purpose, and a demand for admittance. *See State v. Young,* 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Lowrie,* 12 Wn. App. 155, 528 P.2d 1010 (1974). RCW 10.31.040 codifies this rule in Washington. A forcible entry, not prompted by necessitous circumstances, requires suppression of any evidence found in the course of the search. *State v. Edwards,* 20 Wn. App. 648, 581 P.2d 154 (1978). Sainz maintains that the entry here was forced, as Rawlings pushed open the door that Ramirez held ajar, and that no opportunity was given Ramirez either to consent or refuse. We note initially that there is no requirement of an affirmative refusal. *State v. Jones,* 15 Wn. App. 165, 547 P.2d 906 (1976). The knock and announce conditions[3]

> cannot be rigid and inflexible or they become an empty formality. The conditions are part of a criteria of reasonableness . . .

*State v. Young, supra* at 215. The inquiry then is whether the entry under these circumstances was so unreasonable as to vitiate the officers' prior knock and announcement of purpose.

---

[3]There is no requirement that the knock and announce be heard. The regular occupant may not be in the room or may be deaf. The conditions are required merely to give reasonable "notice" in the event someone is there.

■ In *State v. Haggarty,* 20 Wn. App. 335, 579 P.2d 1031 (1978), four officers went to the apartment of one Hamilton to execute a search warrant for stolen property. While two of the officers secured the back door, the other two approached the front door, knocked, and stated their purpose.

> After approximately 30 seconds, Hamilton opened the door. One of the two officers stated "We have a search warrant" and simultaneously pushed Hamilton back into the apartment.

*State v. Haggarty, supra* at 336.

Defendant Haggarty was found seated in the living room in a cloud of marijuana smoke and within reach of smoking paraphernalia. The trial court concluded that the officers violated RCW 10.31.040, and suppressed LSD which was found in Haggarty's coat. In reversing, this court stated:

> The record indicates that the officers had reasonable cause to believe that the apartment was occupied by Hamilton at the time they approached it. Hence, if Hamilton had not come to the door, the officers would have been justified in forcing entry. . . . The fact that Hamilton opened the door after a delay which would have been sufficient to warrant forcible entry should not vitiate the efficacy of the officers' prior action. In fact, the officers would have been justified in believing the door was opened as the result of their demand. To allow the opening of the door by Hamilton to nullify the prior "knock and announce" actions of the officers is tantamount to requiring them to wait for an affirmative refusal. In *State v. Jones,* 15 Wn. App. 165, 547 P.2d 906 (1976), this court held there was no requirement for an affirmative refusal before officers would be permitted to forcibly enter a residence. The officers complied with RCW 10.31.040.

(Citation and footnotes omitted.) *State v. Haggarty, supra* at 338.

We find *Haggarty* persuasive. There, as here, the officers had knocked and announced, and were justified in believing that the door was opened in response. Although unnecessary roughness in executing a warrant cannot be condoned,

such conduct does not rise to constitutional magnitude or invalidate an otherwise legal search or negate prior compliance with RCW 10.31.040.[4] There was no action here that shocked the conscience.

Relying on *State v. Tuss,* 21 Wn. App. 80, 584 P.2d 421 (1978), and *State v. Smith,* 17 Wn. App. 231, 562 P.2d 659 (1977), Sainz contends that the trial court erred in not instructing the jury that the State is required to prove scienter as an element of the crime of possession.

 We find the above cases inapplicable: both involved RCW 69.50.401(a) (possession with intent to deliver). Here, Sainz was charged with constructive possession pursuant to RCW 69.50.401(c), which provides in pertinent part:

> It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter.

In Washington, the State need not prove that an accused intended to possess drugs or had actual knowledge of their existence in order to present a prima facie case of possession. *State v. Rood,* 18 Wn. App. 740, 573 P.2d 1325 (1977); *State v. Perry,* 10 Wn. App. 159, 516 P.2d 1104 (1973); *State v. Edwards,* 9 Wn. App. 688, 514 P.2d 192 (1973); *State v. Dodd,* 8 Wn. App. 269, 505 P.2d 830 (1973). The State sustains its burden if it proves beyond a reasonable doubt that the defendant had dominion and control over either the contraband or the premises on which it was found. *State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969); *State v. Walcott,* 72 Wn.2d 959, 435 P.2d 994 (1967). Mere proof of possession is sufficient, absent a showing *by the defendant* that the possession was unwitting, authorized by law or otherwise excusable under the statute. *State v. Mantell,* 71 Wn.2d 768, 430 P.2d 980

---

[4]Further, the search warrant was for weapons. Although this does not necessarily create exigent circumstances, there would certainly be no reason for delay in executing the warrant.

540

(1967); *State v. Clay,* 7 Wn. App. 631, 501 P.2d 603 (1972). In this case, Sainz did not testify or present other evidence to establish the legality of his possession.

It is a legislative, not a judicial, function to determine whether intent or guilty knowledge is an essential element of constructive possession. *State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961). RCW 69.50.401(c) is devoid of an intent requirement, and we will not judicially supply that element if the legislature has chosen to omit it. Therefore, the contention that the trial court's instructions were erroneous is rejected.

The remaining assignments of error have been carefully considered and are found to be without merit. The judgment is affirmed.

GREEN, C.J., and MUNSON, J., concur.