[Nos. 47310-2, 47334-0. En Banc. October 29, 1981.]

THE STATE OF WASHINGTON, *Petitioner*, v. GERALD PAUL CLEPPE, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. VELMA J. SYKES, *Respondent*.

374

*Norm Maleng, Prosecuting Attorney,* and *Rebecca J. Roe* and *James M. Roe, Deputies,* for petitioner.

*Edwards & Barbieri,* by *Malcolm L. Edwards* and *Charles K. Wiggins,* for respondent Cleppe.

*Lee, Smart, Cook & Martin,* by *John W. Schedler,* for respondent Sykes (appointed counsel for appeal).

HICKS, J.—In these cases, consolidated on appeal, Gerald P. Cleppe was tried by jury and Velma Sykes by the court. Both were convicted of possession of a controlled substance

proscribed by RCW 69.50.401(c), now RCW 69.50.401(d).[1]

On appeal, the Court of Appeals, Division One, reversed Cleppe's conviction on the ground that possession of a controlled substance is a crime mala in se requiring proof of "guilty knowledge" for conviction, which proof was lacking. In the case of Sykes, the matter was remanded to the trial court for a finding of fact as to whether the defendant had "guilty knowledge" of the presence or character of the controlled substance which she was convicted of possessing. Both opinions of the Court of Appeals are unpublished. We granted the State's petition for discretionary review and in both cases we reverse the Court of Appeals.

We are concerned here with two issues. One, confined to Cleppe's case, is whether an unnamed police informant must be disclosed. The other issue, common to both cases, is whether either "intent" or "guilty knowledge" is an element of the crime of possession of a controlled substance. Neither is specifically made so by this state's statute, RCW 69.50.401(c).

May 4, 1977, Seattle police executed search warrants covering the Playhouse Tavern and a 19th Avenue N.E. house, both owned by Cleppe. Probable cause for the warrants was established by an affidavit based upon information supplied the police by two unnamed informants, A and B. The search at the tavern turned up a miniscule amount of cocaine, as the basis for count 1. At the 19th Avenue residence a quantity of marijuana and several amphetamine pills were found, as the bases for counts 2 and 3.

Cleppe was charged with three counts of possession of a controlled substance and subsequently convicted on all counts. At trial, he excepted to the court's refusal to include "knowledge" as an element of the crime charged and offered a curative instruction. The court did, however,

---

[1]As amended by Laws of 1979, ch. 67, § 1, new subsection (d) reads in part:

"(d) It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter."

instruct that if Cleppe's possession was unwitting, he should be acquitted.

A major question presented to the jury was that of constructive possession. Cleppe asserted the marijuana and amphetamine pills belonged to his girlfriend who rented his 19th Avenue house. In connection with this assertion, Cleppe sought disclosure of the identity of informant B. He contended B's testimony would place ownership of the controlled substance found at the 19th Avenue residence in his girlfriend and, thus, negate constructive possession in him. Cleppe denied any knowledge or ownership of the cocaine.

The companion case on appeal arises from the November 30, 1978, execution by Seattle police of search warrants covering two apartments, only one of which is here concerned. There the police found Velma Sykes and in a bedroom her two sleeping children. In a second bedroom a quantity of marijuana was discovered in matchboxes stacked on a nightstand. In the closet there was wearing apparel for both a man and woman, a man's plaid sport jacket with 100 Valium tablets in a pocket, and additional matchboxes of marijuana in a sack on the floor.

Sykes was charged with possession of a controlled substance (marijuana) with intent to manufacture and deliver under RCW 69.50.401(a). Trial was to the court.

At trial, the State relied upon constructive possession to convict, which was the main issue in the case. A major question was whether at the time of execution of the search warrant Sykes was living in the apartment where she was found. It is undisputed that she had in the past resided there with her boyfriend. He was living in the apartment though not present at the time of the search and at trial he testified the drugs were his.

The trial court resolved the issue of constructive possession against Sykes. While she had been charged with possession of a controlled substance with intent to deliver, the State did not prove the element of intent. The court found her guilty only of the lesser included offense of simple possession of a controlled substance.

Sykes challenges as improper the way in which the findings of fact and conclusions of law were entered in her case. Because of that impropriety she asks that the findings not be regarded as verities, though she makes no specific objection to any finding in the Court of Appeals or here. A general assignment of error was made that the court's findings of fact were insufficient to support a judgment of guilty of possession of a controlled substance.

We have carefully reviewed the record. We are satisfied that substantial evidence supports the trial court's finding that Sykes had dominion and control over the premises where marijuana was found and, thus, was in constructive possession of it. The trial court made no finding that she was aware of the presence of marijuana in the apartment or that she had the intent to possess it. That is the basis of her appeal.

Both Cleppe and Sykes contend that guilty knowledge of or intent to possess a controlled substance is an essential element of the crime of simple possession. That element was not proved by the prosecution in either of these cases. Because of that omission, Division One of the Court of Appeals reversed in the one instance and remanded for a further finding in the other.

The Court of Appeals is divided on the matter of guilty knowledge or intent to possess. Division One holds that simple possession of a controlled substance is a crime mala in se and that "guilty knowledge" is a necessary element of the crime. See State v. Hennings, 3 Wn. App. 483, 475 P.2d 926 (1970); State v. Smith, 17 Wn. App. 231, 562 P.2d 659 (1977); State v. Weaver, 24 Wn. App. 83, 600 P.2d 598 (1979). Division Three, on the other hand, has declined to follow Division One and holds that after establishing the nature of the substance and jurisdiction, possession alone, actual or constructive, is the sole element to be proved to convict of the crime of possession of a controlled substance under RCW 69.50.401(c). See State v. Sainz, 23 Wn. App. 532, 596 P.2d 1090 (1979) and State v. Hartzog, 26 Wn. App. 576, 615 P.2d 480 (1980).

■■ This court's cases decided under the prior statute, the Uniform Narcotic Drug Act, rather uniformly held that neither "intent" nor "guilty knowledge" was a required element of the crime of simple possession of a narcotic drug. *See State v. Henker,* 50 Wn.2d 809, 314 P.2d 645 (1957); *State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961). The reason, as set forth in *Henker* at page 812, is that "[w]hether intent or guilty knowledge is to be made an essential element of this crime is basically a matter to be determined by the legislature." The court notes that a precursor statute[2] contained the words "with intent", which words had been omitted from the current statute, leading conclusively to the view that "[h]ad the legislature intended to retain guilty knowledge or intent as an element of the crime of possession, it would have spelled it out as it did in the previous statute." We are similarly compelled to that view in the cases before us.

The statute concerned in *Henker,* the predecessor to the current drug statute, read in part:

> *It shall be unlawful for any person to* manufacture, *possess,* have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug . . .

(Italics ours.) RCW 69.33.230. This statute was repealed in 1971, and replaced by RCW 69.50, the Uniform Controlled Substances Act.

RCW 69.50.401(a) and (c) were amended in 1973 to read:

> (a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
>
> . . .
>
> (c) *It is unlawful for any person to possess a controlled substance* unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his

---

[2]The prior narcotics act, Laws of 1923, ch. 47, § 3, p. 134, provided:

"It shall be unlawful for any person to sell, furnish, or dispose of, or have in his possession with intent to sell, furnish, or dispose of any narcotic drug or drugs, except upon the written and signed prescription of a physician regularly licensed to practice medicine and surgery . . ."

professional practice, or except as otherwise authorized by this chapter.

(Italics ours.)

We note that our legislature did not adopt the language of subsection 401(c) of the uniform act:

> (c) Except as provided in Section 409, it is unlawful for any person *knowingly* or *intentionally* to possess a controlled substance . . .

(Italics ours.) 9 U.L.A. 259 (Master ed. 1979). Our opinion turns on the clear manifestation of legislative intent in omitting the key words "knowingly" and "intentionally".

In reviewing the legislative history of this state's version of the Uniform Controlled Substances Act, RCW 69.50, we find it first set out in Senate Bill 146, 42d Legislature (1971) (SB 146). Introduced in January 1971, SB 146 followed the uniform act and the words "knowingly or intentionally" were included in subsection 401(c).

After first reading, it was referred to committee where it was replaced by Substitute Senate Bill 146 (SSB 146). The words "knowingly or intentionally" were omitted from subsection 401(c) of the substitute bill. A second Substitute Senate Bill 146 (2d SSB 146) replaced SSB 146. It, too, omitted the words "knowingly or intentionally" from subsection 401(c).

Following passage of 2d SSB 146 by the Senate, it was sent to the House, and though other changes were made in the bill the House continued to omit the words "knowingly or intentionally" from the crime of possession of a controlled substance in subsection 401(c).

In *State v. Boyer,* 91 Wn.2d 342, 588 P.2d 1151 (1979), we held that "guilty knowledge", defined as an understanding of the identity of the product being delivered, was an intrinsic element of the crime of delivery of a controlled substance under subsection 401(a). To convict under that subsection, the State must prove that element beyond a reasonable doubt. *Boyer* has been read in conflicting fashion by the Court of Appeals in *Weaver* and *Hartzog.*

In *Hartzog,* Division Three read *Boyer* to mean that

delivery of a controlled substance was to be regarded as a crime mala in se when "guilty knowledge" was held by this court to be an intrinsic element of the offense, though mala in se is not discussed in the case. Division Three, however, did not extend the mala in se characterization to the crime of simple possession of a controlled substance. That offense was held to be mala prohibita because possession is proscribed in a separate subsection, and does not provide that guilty knowledge or intent are elements of the crime. Division Three harmonizes *Boyer* by characterizing subsection 401(a) crimes as mala in se and bases its construction of subsection (c) as a mala prohibita crime on *Henker* reasoning. That is, if the legislature had intended guilty knowledge or intent to be an element of the crime of simple possession of a controlled substance it would have put the requirement in the act.

We need not discuss further mala in se and mala prohibita. Suffice to say that the legislature in responding to the problem of drug abuse, one of the major social evils of our time, adopted the Uniform Controlled Substances Act. The act, as introduced in the Senate, made "knowingly" and "intentionally" elements of the misdemeanor of simple possession of a controlled substance. As the legislature worked its will on the bill, the words "knowingly or intentionally" were deleted from subsection 401(c) and the crime was upgraded from a misdemeanor to a felony. No change was made in subsection 401(a), as introduced.

This conflict, if such it be, must be corrected by the legislature, not the court. The legislature has met twice since our decision in *Boyer* that guilty knowledge is an implicit element of the subsection 401(a) crime of delivery, and it has not revised subsection 401(a). As to subsection 401(c), the legislative intent is clear.

■ That unwitting possession has been allowed as an affirmative defense in simple possession cases may seem anomalous. If guilty knowledge or intent to possess are not elements of the crime, of what avail is it for the defendant to prove his possession was unwitting? Such a provision

ameliorates the harshness of the almost strict criminal liability our law imposes for unauthorized possession of a controlled substance. If the defendant can affirmatively establish his "possession" was unwitting, then he had no possession for which the law will convict. The burden of proof, however, is *on the defendant*. In Cleppe's case, that issue was presented to the jury by an appropriate instruction. The jury found against him.

Prior to trial, Cleppe moved for disclosure of the identities of both informants. Before this court, he limits his request and assignment of error to informant B. A separate hearing was held before a judge other than the one who presided at Cleppe's trial. Since constructive possession would be a vital issue at trial, Cleppe sought the informant's identity with a view to obtaining testimony that would bear on the issue of ownership of the drugs. The basis for this request was the probable cause affidavit, according to which informant B claimed to have observed within the past 24 hours in the 19th Avenue house Cleppe's girlfriend use heroin, and heard her state that additional heroin belonged to her and that "they" had cocaine for sale.

The hearing judge denied Cleppe's motion for disclosure on its finding that the informant was not a necessary and material witness. The Court of Appeals affirmed this ruling.

Generally, the State need not disclose the identity of an informant furnishing information establishing probable cause for the issuance of warrants. RCW 5.60.060(5); CrR 4.7(f)(2); *State v. Harris,* 91 Wn.2d 145, 588 P.2d 720 (1978). The State's privilege of nondisclosure, however, must yield where such disclosure is relevant and helpful to an accused and essential to a fair trial. *Roviaro v. United States,* 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957).

The exception is not susceptible to hard and fast rules. Its proper use entails balancing the public interest in continuing the flow of information from the informant against the accused's right to prepare a defense. How the balance falls depends on the circumstances of each case considering the type of crime charged, possible defenses, possible sig-

nificance of the informer's testimony and any other relevant facts. *Roviaro,* at 62.

If the trial court deems that the informant's testimony may be relevant and helpful to the defense and essential to a fair trial, disclosure may be required. "The preferred method for making this determination . . . is for the court to hold an in camera session at which the judge hears the informer's testimony and applies the *Roviaro* standard." *Harris,* at 150. No hearing is necessary, however, if the accused's reasons for seeking the informant's testimony are only speculative, though the hearing judge should take into consideration the difficulty of explaining in a vacuum why the testimony is crucial. *See* Comment, *Defendant's Right to a Confidential Informant's Identity,* 40 La. L. Rev. 147, 168 (1979). Doubt should be resolved in favor of holding the in camera hearing.

This case was heard in the trial court before *State v. Harris, supra* or *State v. Allen,* 27 Wn. App. 41, 615 P.2d 526 (1980) were decided. In *Allen,* the Court of Appeals reversed and remanded for a *Roviaro* type hearing in an appropriate case.

*Cleppe* is also an appropriate case for such a hearing. Informant B told the affiant he had (1) been in the 19th Avenue house, (2) observed Cleppe's girlfriend use heroin, (3) observed an additional quantity of heroin which the girlfriend said belonged to her, and (4) she had said "they" had cocaine for sale. *See State v. Allen, supra.*

There is evidence that the 19th Avenue house was occupied by more than one person, both Cleppe and his girlfriend. *See State v. Allen, supra.* There is also evidence that Cleppe rented the house to his girlfriend and that he lived elsewhere.

The pivotal question at trial regarding the controlled substances found at the 19th Avenue address involved constructive possession. Informant B may have been able to testify regarding whether the nature of the girlfriend's possession of the drugs was exclusive. His testimony could possibly aid in negating the State's case of constructive

possession by Cleppe. Therefore, Cleppe has made a showing of relevancy, and such disclosure as he seeks may be necessary for a fair trial, necessitating a *Roviaro* type hearing in his case. Thus the Court of Appeals is reversed, and the case is remanded for a hearing under the auspices of CrR 4.7(h)(6). Should the trial court determine after the in camera hearing that informant B's testimony would be relevant or helpful to Cleppe's defense and is required for a fair trial, then a new trial should be granted as to counts 2 and 3. If the court determines to the contrary, the judgment on the jury's verdict is reinstated. In any event as to count 1, the judgment is reinstated.

As to Sykes, the Court of Appeals is reversed and the judgment of the trial court reinstated.

BRACHTENBACH, C.J., ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, and DIMMICK, JJ., and THOMPSON, J. Pro Tem., concur.

Reconsideration denied December 17, 1981.