STATE of North Dakota, Plaintiff and Appellee,

v.

Clayton Virgil MORRIS, Defendant and Appellant.

and

STATE of North Dakota, Plaintiff and Appellee,

v.

Gail John WANNER, Defendant and Appellant.

Cr. Nos. 865, 870.

Supreme Court of North Dakota.

March 3, 1983.

---

7. See footnote 2.

Charles J. Gilje, State's Atty., Jamestown, for plaintiff and appellee State of N.D.

James A. Reisnour, of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant Clayton Virgil Morris.

Irvin B. Nodland, of Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for defendant and appellant Gail John Wanner.

VANDE WALLE, Justice.

Gail John Wanner and Clayton Virgil Morris appealed from the respective judgments of conviction entered against them by the Stutsman County district court. Wanner and Morris were charged with the crime of possession of a controlled substance with intent to deliver in violation of Section 19–03.1–23(1) of the North Dakota Century Code. Following a joint trial by jury, Wanner was found guilty of possession of marijuana with intent to deliver, and Morris was found guilty of the lesser included offense of possession of less than one-half ounce of marijuana. We affirm.

On February 3, 1981, Leon Okerlund and Ardel Wolff, detectives for the Jamestown police department, together with Jack Miller, the chief deputy and county investigator for the Stutsman County sheriff's department, traveled to Medina in an unmarked car and wearing civilian clothes to investigate a tip they had received that a drug transaction was to take place there. The informant apparently did not identify the parties who would be involved in the drug deal, but did describe the vehicles they would be occupying: a brown Ford car with taillights which extended across the full width of the rear, and a green van.

When the policemen arrived in Medina, they saw a brown Ford Thunderbird, which had taillights across the entire back of the car, driving around the streets of the town. The Thunderbird eventually stopped and its three occupants entered a nearby bar. Detective Wolff followed the three suspects into the bar and overheard one of them announce to the bartender that if people in a green van came into the bar, he should tell them to look for him and his friends at the other bar in town.

After the people in the Thunderbird went into the other bar, the police officers began looking for the green van. While parked at the south end of Medina, the officers observed a green van come off Interstate 94 and drive into Medina. They followed the van to downtown Main Street where it parked diagonally to the curb. Miller, who was driving the unmarked police car, pulled up to the right of and next to the green van, and then suddenly the Thunderbird pulled up to the right of and next to Miller.

As Miller was parking next to the van, the passenger door opened, and the headlights of the car shone into the van making it possible for him to see there were beer cans on the "console" between the driver's and the passenger's seats.[1] Coming out of the passenger door was Morris, who had been sitting in the passenger's seat, and Wanner, who had been riding in the back of the van. Officer Miller walked to the passenger's side of the van to take a closer look at the interior and observed what he believed to be some loose marijuana in a clear cellophane package and a marijuana cigarette.[2] Miller and Okerlund were not sure whether to call the area in the van where this marijuana was located the "dash" or the "console." Even so, Miller's and Okerlund's testimony at trial made it clear the marijuana in question was in open view in the console area next to the beer cans, which would be somewhere between the two front seats on or near the cover over the motor.

Upon discovering the marijuana, the officers had the van driven to the Medina fire hall where they conducted a thorough search of the interior. The search produced an opaque, brown paper bag containing a large quantity of marijuana which was later determined to weigh 444.3 grams, or approximately one pound. The bag was found on the floor of the van behind the

---

1. Deputy Miller described the van as snub-nosed, with the motor positioned directly behind the dash and between the driver's and passenger's seats. Over the motor was a cover which extended into the van nearly to the back of the front seats. It is this cover that Miller referred to when he used the term "console." The van had no back seats, but did have benches which had been built into the sides of the van, apparently to store tools, etc.

2. The combined weight of the marijuana cigarette and the marijuana in the cellophane package was 4.86 grams, or less than one-half ounce, which equals approximately 14 grams. One pound equals 453.59 grams.

console and between, but near the back edge of, the two front seats.

Following the search, Wanner, Morris, and Blake Graff, the owner/driver of the van, were arrested and taken to the Stutsman County jail. At the jail, the deputy on duty carried out a routine inventory of the three men's possessions and discovered a folded piece of paper in Wanner's wallet.

Various words, abbreviated words, figures, and calculations were written on the paper. The word "pot" occurred in two separate places. The piece of paper was initialed by the deputy jailer, given to Officer Miller, and later introduced at trial as State's Exhibit 5. The following reproduction of State's Exhibit 5 shows the two places where the word "pot" appeared on the paper:

*[State's Exhibit 5 — reproduction of handwritten note]*

Savingings 3786
Savings 357
owed 370
pot 970
$ 5483
900 — Car possibility
$ 6383
low high
$900 1200

Right column:
pot
4 BAYS (45 EA) $180
½ Lb (145 EA) 290
1 LB (500 P.) 500
 $ 970

5493
1200
6693

---

## I

Expert testimony was given by law-enforcement officials at trial concerning the amount of marijuana which in their opinion a person would have in his possession for personal use as opposed to for sale. The foundation prepared for each official's testimony showed him to be well trained and experienced. Each testified to having had a variety of contacts, either through arrests or undercover work, with both drug sellers and drug users. All of them gave the opinion, based upon these experiences, that a person in possession of one pound of marijuana would normally have it for sale rather than for personal use.

Wanner now contends that the trial court erred by permitting the law-enforcement officers to give their opinion on this matter.

Rule 702, N.D.R.Ev., which governs the use of expert testimony, states:

"If *scientific, technical,* or *other specialized knowledge* will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." [Emphasis added.]

In *Stein v. Ohlhauser,* 211 N.W.2d 737 (N.D.1973), this court had an opportunity to discuss the proper application of Rule 702 and said in the court's syllabus:

"1. In order to establish a foundation for expert testimony, a showing must be made that the subject matter is one where expert testimony is accepted by the scientific community and the courts and that the proffered expert has sufficient expertise to aid the jury in the area of his competence."

Wanner argues from this proposition that if the testimony being offered is not of a

type generally accepted by the scientific community, it should not be received in evidence. Wanner's argument unduly and unjustifiably restricts the scope of Rule 702.

Rule 702, N.D.R.Ev., is based upon Rule 702 of the Federal Rules of Evidence. See Explanatory Note, Rule 702, N.D.R.Ev. The Notes of the Advisory Committee on Proposed Rules which accompany Federal Rule 702 state, in relevant part:

> "The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by '*knowledge, skill, experience, training or education.*'" [Emphasis added.]

This explanation of the intended scope of Rule 702 makes it fairly obvious that our statement in *Ohlhauser* was restricted to the pertinent facts of the case. The expert testimony offered in *Ohlhauser* concerned a matter of physics, a systematic and exact discipline; in short, it concerned a matter of science.

At no time in the present case did the State pretend to offer expert testimony on a matter of science. To the contrary, the State in preparing a foundation for the expert testimony emphasized the special knowledge of the law-enforcement officials which they had acquired through extensive experience with drug sellers and users.

■ We believe that an experienced, well-trained, and knowledgeable law officer may give his opinion that a certain quantity of marijuana would normally be possessed for purposes of sale rather than for personal use. *People v. Newman,* 5 Cal.3d 48, 95 Cal.Rptr. 12, 484 P.2d 1356 (1971); *State v. Marks,* 337 So.2d 1177 (La.1976). See also *State v. O'Mealey,* 95 Idaho 202, 506 P.2d 99 (1973). Accordingly, we conclude the trial court did not err in permitting the officials to testify that in their opinion the possession of one pound of marijuana is usually intended for sale.

## II

Wanner and Morris maintain there was insufficient evidence to justify the jury's verdict of guilty. Both suggest their convictions were based on the mere circumstance that they were passengers in a van where marijuana was found.

■ When asked to review the evidence presented at trial to determine if it is sufficient to sustain a conviction, we will examine the evidence in the light most favorable to the verdict to see if a rational trier of fact could have found that the essential elements of the crime were established beyond a reasonable doubt. *State v. Manke,* 328 N.W.2d 799 (N.D.1982); *State v. Olson,* 290 N.W.2d 664 (N.D.1980); *State v. Larson,* 274 N.W.2d 884 (N.D.1979).

■ To convict an accused of unlawful possession of marijuana, the State must prove (1) the accused had possession of marijuana. See *State v. Rippley,* 319 N.W.2d 129 (N.D.1982); Section 19–03.1–23(3), N.D. C.C. To convict an accused of possession of marijuana with intent to deliver, the State must prove in addition to (1) that (2) the accused possessed the marijuana with the intent to deliver it. See *Rippley, supra,* 319 N.W.2d at 133; Section 19–03.1–23(1), N.D. C.C.

■ Possession may be actual or constructive, exclusive or joint [*Larson, supra,* 274 N.W.2d at 886 (Burdick, Supreme Court Commissioner, concurring specially)], and may be shown entirely by circumstantial evidence [*Olson, supra,* 290 N.W.2d at 670; *Commonwealth v. Bentley,* 276 Pa.Super. 41, 419 A.2d 85 (1980)].

■ An individual has actual possession of a controlled substance if, for example, it is found on his person. The State may also show possession by proving the individual constructively possessed the substance. To prove constructive possession the State must present evidence which establishes that the accused had the power and capability to exercise dominion and control over the contraband. See *United States v. Hubbard,* 429 A.2d 1334 (D.C. 1981), *cert. denied,* 454 U.S. 857, 102 S.Ct.

308, 70 L.Ed.2d 153 (1981); *State v. Woodruff,* 205 Neb. 638, 288 N.W.2d 754 (1980); *Peters v. State,* 521 S.W.2d 233 (Tenn.Cr. App.1975); *State v. Cleppe,* 96 Wash.2d 373, 635 P.2d 435 (1981); *State v. Boyer,* 91 Wash.2d 342, 588 P.2d 1151 (1979); *State v. Hartzog,* 26 Wash.App. 576, 615 P.2d 480 (1980); *State v. Sainz,* 23 Wash.App. 532, 596 P.2d 1090 (1979); *State v. Edwards,* 9 Wash.App. 688, 514 P.2d 192 (1973). The State, however, does not have to prove either (1) the accused had knowledge of the presence of the drug, or (2) the accused had knowledge of the identity of the substance [see *Rippley, supra,* 319 N.W.2d at 133; *Cleppe, supra,* 635 P.2d at 439; *Sainz, supra,* 596 P.2d at 1095]; and this is true of both the offenses of simple possession and possession with the intent to deliver.[3] See *Rippley, supra,* 319 N.W.2d at 133.

■ The evidence required to show an individual's power and capability to exercise control over a controlled substance need only establish his right or his ability to control, in a realistic and practical sense, the area where, or the container in which, the contraband is found. *Martin v. State,* 175 Ind.App. 503, 372 N.E.2d 1194 (Ind.Ct. App.1978).

■ Constructive possession, or the ability to exercise dominion and control over a controlled substance, can be inferred from the totality of circumstances associated with a particular case. *Commonwealth v. Harris,* 263 Pa.Super. 110, 397 A.2d 424 (1979); *Commonwealth v. Gilchrist,* 255 Pa. Super. 252, 386 A.2d 603 (1978). See also *Reed v. State,* 368 So.2d 326 (Ala.Cr.App. 1979); *Watt v. State,* 412 N.E.2d 90 (Ind.Ct.

App.1980). Some of the additional circumstances which may support an inference of constructive possession are an accused's presence in the place where a controlled substance is found [*Pier v. State,* 400 N.E.2d 209 (Ind.Ct.App.1980); *Gilchrist, supra,* 386 A.2d at 604], his proximity to the place where it is found [*Reed, supra,* 368 So.2d at 328; *Hubbard, supra,* 429 A.2d at 1338; *Watt, supra,* 412 N.E.2d at 103 (Shields, J., concurring in part and dissenting in part); *State v. Faulkner,* 220 Kan. 153, 551 P.2d 1247 (1976); *State v. Jackson,* 576 S.W.2d 756 (Mo.Ct.App.1979); *Woodruff, supra,* 288 N.W.2d at 756], and the fact that the controlled substance is found in plain view [*Reed, supra,* 368 So.2d at 328; *Faulkner, supra,* 551 P.2d at 1254; *Winchell v. State,* 362 So.2d 992 (Fla.Dist.Ct.App. 1978)].

The jury found Morris guilty of possession of less than one-half ounce of marijuana; hence, it found him guilty of possessing the marijuana cigarette or the marijuana in the cellophane package, both of which were located in the console/dash area of the van between the passenger's and the driver's seats.

The State presented evidence which established (1) Morris was present in an area where marijuana was found, (2) Morris was in close proximity to the marijuana found, and (3) this marijuana was observed in plain view by the officer looking through the front passenger's side of the van.

■ We believe from these particular facts that a jury could reasonably infer beyond a reasonable doubt that Morris had the ability to control the area where, and

---

**3.** In this regard, there is an important difference between our views and those expressed by the Washington courts. Although the Supreme Court of Washington agrees that simple possession does not require proof of guilty knowledge [*Cleppe, supra,* 635 P.2d at 439], it holds, contrary to our decision in *Rippley,* that delivery of a controlled substance, and presumably possession of a controlled substance with intent to deliver, does require proof of guilty knowledge. *Boyer, supra,* 588 P.2d at 1152. More will be said on this point when we consider Wanner's and Morris's arguments against the jury instructions given in this case.

Also of some consequence is the Washington Supreme Court's recognition of an affirmative defense to the crime of simple possession. Interestingly, the court refers to its simple-possession statute as creating an *almost* strict-liability offense. Even though, the court explains, an accused may be convicted of simple possession without having guilty knowledge or an intent to possess a controlled substance, if the accused can affirmatively establish he possessed the controlled substance unwittingly, then he will not be held to have unlawfully possessed the substance in violation of the statute. *Cleppe, supra,* 635 P.2d at 440–441.

the package in which, the marijuana was found, and that he therefore was in constructive possession of the marijuana. The evidence, although circumstantial, was sufficient to support the jury's verdict.

In Wanner's case, the jury found him guilty of possession of marijuana with the intent to deliver.

The evidence against Wanner shows that (1) Wanner was present in an area where marijuana was found, (2) Wanner's position in the back of the van placed him in close proximity to the near-pound of marijuana found in the brown paper sack behind the console and two front seats, (3) he was situated in a vehicle in which other marijuana was found in plain view, (4) the police officers from Jamestown who arrested Wanner in Medina had previously received information that a green van and a brown Ford would be involved in a drug transaction in Medina, (5) law-enforcement officials testified that (i) the standard of weight applied to a quantity of marijuana is ounce/pound, (ii) another name for marijuana is "pot," (iii) an ounce of marijuana is commonly referred to as a "bag" or a "lid," (iv) the street value of marijuana, depending upon quality, is anywhere from $45 to $60 an ounce, and between $350 to $900 a pound, and (v) a person in possession of one pound of marijuana normally would possess it for purposes of sale, and (6) Wanner had a slip of paper in his wallet with the word "pot" written on it and what appeared to be a price list for specified amounts of marijuana written below that.

■ Our review of this evidence leads us to conclude that a rational trier of fact could find beyond a reasonable doubt that Wanner possessed the approximately one pound of marijuana found in the paper sack, and that he possessed the marijuana with the intent to deliver it.

### III

Morris next argues that the trial court erred in denying his motion for judgment of acquittal at the close of the State's case because there was insufficient evidence from which the jury could find by reasona-

ble inference that he committed the offense of possession of marijuana with intent to deliver. See Rule 29, N.D.R.Crim.P.

■ When ruling on a motion for judgment of acquittal made pursuant to Rule 29, N.D.R.Crim.P., the trial court must, first, assume the truth of the evidence which supports the State's case, and then, second, decide whether or not a reasonable person would be justified in concluding from this evidence that all the elements of the crime have been established beyond a reasonable doubt. *State v. Holy Bull*, 238 N.W.2d 52 (N.D.1975); *State v. Allen*, 237 N.W.2d 154 (N.D.1975).

■ Considering that the only substantial difference between the evidence previously recited in support of our conclusion that the evidence presented at trial was sufficient to justify a rational trier of fact in concluding that Wanner was guilty of possession with intent to deliver and the evidence presented by the State against Morris is that Wanner had a slip of paper in his wallet with incriminating writing on it, we cannot conclude that the trial judge erred in denying Morris's motion for judgment of acquittal and submitting the case to the jury. Morris, too, could reasonably be found to have been in possession of the marijuana in the brown paper sack. And, from the quantity of marijuana found and the information the police officers had regarding a drug transaction which was to take place in Medina involving a green van and a brown Ford car, we believe the trial court could have determined there was sufficient evidence from which a jury could reasonably conclude that Morris possessed the marijuana in the paper bag with the intent to deliver it.

One might wonder what difference it makes whether the trial judge granted or denied Morris's motion for judgment of acquittal with regard to the major offense charged, i.e., possession with intent to deliver, because Morris was not convicted of the major offense charged; he was convicted of the lesser included offense of simple possession. Had we decided that Morris's motion

for acquittal of the crime of possession with intent to deliver should have been granted, Morris would have had us ·use this decision as a premise in a more elaborate argument: namely, once the trial judge decides a jury could not reasonably conclude from the evidence at trial that the accused is guilty of the major offense charged, and therefore the motion for judgment of acquittal should be granted, the trial judge should not let the case go to the jury even if there is sufficient evidence for the jury to find the accused guilty of a lesser included offense.

Morris's conception of the procedure a trial judge should follow if a motion for acquittal is granted is not correct.

 A trial court's granting of a motion for judgment of acquittal with respect to the major offense charged does not preclude submission of the case to the jury on the basis of the lesser included offense instruction unless, of course, the granting of the motion for acquittal extends to the lesser included offense. *Howard v. United States,* 237 F.2d 216, 99 U.S.App.D.C. 62 (1956), *cert. denied,* 359 U.S. 917, 79 S.Ct. 595, 3 L.Ed.2d 579 (1959); *State v. Marti,* 290 N.W.2d 570 (Iowa 1980); *State v. Strong,* 339 S.W.2d 759 (Mo.1960); *State v. Vincent,* 321 S.W.2d 439 (Mo.1959).

 Therefore, even if Morris's motion for judgment of acquittal of the crime of possession with intent to deliver should have been granted, we still would find no reversible error on the trial court's part in submitting Morris's case to the jury because Morris was convicted of the lesser included offense of simple possession and there was sufficient evidence to support a verdict of guilty to the crime of simple possession. See *Morgan v. State,* 363 So.2d 1013 (Ala. Cr.App.1978).

### IV

Wanner's final argument is that the trial court erred in its instruction to the jury that the offense of possession of a controlled substance with intent to deliver re-

quired the State to prove beyond a reasonable doubt that Wanner intentionally *and knowingly* possessed marijuana with the intent to deliver it.

Section 19–03.1–23(1), which creates the offense of possession with intent to deliver, states:

"1. *Except as authorized by this chapter, it is unlawful for any person to* manufacture, deliver, or *possess with intent to* manufacture or *deliver, a controlled substance;* . . ." [Emphasis added.]

In *State v. Rippley, supra,* 319 N.W.2d at 133, we decided that the crime of unauthorized delivery of a controlled substance, which also is created by Section 19–03.1–23(1), N.D.C.C., is a strict-liability offense; that is to say, to prove commission of the crime, the State need not prove the accused had the intent to deliver a controlled substance or that he knew the material delivered was a controlled substance.

Just as the language and legislative history of Section 19–03.1–23(1) directed our decision in *Rippley,* it guides our decision in this case. The language of Section 19–03.-1–23(1) does not make knowledge or intent to possess an element of the offense of possession with intent to deliver; neither the intent to possess a controlled substance nor knowledge that the item possessed is a controlled substance is an essential element of the crime. See *Rippley, supra,* 319 N.W.2d at 133. However, Section 19–03.1–23(1) does by its very language make intent to deliver an essential element of the crime. See *United States v. Pope,* 561 F.2d 663 (6th Cir.1977). In short, although a jury need not consider whether or not an accused had the intent to possess a controlled substance or knew that the material he possessed was a controlled substance before it can find him guilty of possession with intent to deliver, it must consider whether or not the accused had the intent to deliver before it can find him guilty of possession of a controlled substance with intent to deliver.[4]

---

4. Recall that intent to deliver may be inferred from the totality of circumstances which attend

a particular case, and that intent to deliver may

The court's instruction in this case set forth the following elements of possession with intent to deliver:

"1. That Gail John Wanner and Clayton Virgil Morris unlawfully exercised control or had the right to exercise control over certain marijuana,

"2. That they had knowledge of its presence,

"3. That they had knowledge that the substance was marijuana,

"4. That they possessed the marijuana with the specific intent to deliver the same,

"5. That the marijuana was in an amount sufficient to be used for delivery or consumption, and

"6. That they possessed the marijuana with an intent to deliver it on February 3, 1981, in Stutsman County, North Dakota."

■ The only elements included in the instruction which are not justified by our interpretation of that part of Section 19–03.1–23(1) which defines the offense of possession with intent to deliver are "2" and "3." However that may be, the inclusion of "2" and "3" in the instruction to the jury increased the State's burden in this case. If, in fact, the trial court erred by including "2" and "3" in the instruction, such error worked against, or prejudiced, the State, while on the other hand it benefited Wanner. It follows that Wanner suffered no prejudice on account of the membership of elements "2" and "3" in the instruction to the jury; and therefore the error was harmless. See *State v. Lind*, 322 N.W.2d 826 (N.D.1982); *State v. Goetz*, 312 N.W.2d 1 (N.D.1981); *State v. Folk*, 278 N.W.2d 410 (N.D.1979); *State v. Simpson*, 78 N.D. 571, 50 N.W.2d 661 (1951). See also *People v. Iehl*, 100 Mich.App. 277, 299 N.W.2d 46 (1980).

Morris argues, too, that the trial court incorrectly instructed the jury on the essential elements of the crime of simple possession of a controlled substance because it required the jury to find that Morris intentionally and knowingly possessed marijuana.

Once again we look at the language and legislative history of the statute which defines the crime of unlawful possession. Section 19–03.1–23(3) states:

"3. It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter; ..."

■ There is no culpability requirement stated in this section; furthermore, an examination of its legislative history discloses that the Legislature in 1975 deleted the words "intentionally or knowingly" from the language of Section 19–03.1–23(3). See *Rippley, supra,* 319 N.W.2d at 133. The Legislature has clearly indicated its intent to make possession of a controlled substance a strict-liability offense. Hence, the State has only to show, in accordance with the principles stated earlier in this opinion, that an accused possessed a controlled substance in order to convict him of the crime of simple possession. The State does not have to prove either that the accused intended to possess the controlled substance or that he had knowledge of the existence or identity of the substance.[5]

■ It is obvious that the court's instruction to the jury on the offense of simple possession of a controlled substance benefited Morris and prejudiced the State, just as the court's instruction on possession with intent to deliver benefited Wanner and prejudiced the State. Applying the same

be inferred, under appropriate circumstances, from the quantity of the substance possessed.

**5.** Washington's statute governing possession of a controlled substance is identical with that portion of Section 19–03.1–23(3) quoted above.

Its court decisions have placed the same construction as we do on the language of Section 19–03.1–23(3). See *Cleppe, supra,* 635 P.2d at 439; *Hartzog, supra,* 615 P.2d at 480; *Sainz, supra,* 596 P.2d at 1095.

rule that error which constrains the State to prove more than it is required to prove is harmless error, we find that the court's instruction to the jury, if error, did not prejudice Morris, and therefore was harmless.

V

Morris argues as a final issue that Section 19–03.1–23(3) violates due process and equal protection under both the United States and North Dakota Constitutions because it creates a strict-liability offense which may result in the conviction of a person without knowledge of his possession of a controlled substance, and therefore without any conscious or calculated wrongdoing.

Morris himself argues that he was convicted only because of the innocent conduct of merely being present in a vehicle that contained a controlled substance. We point out, however, that there is a significant difference between *saying* and *establishing* that a conviction is the result of entirely innocent conduct.

A generally accepted principle of constitutional law is that a party may challenge the constitutionality of a statute only as applied to him. *Rippley, supra,* 319 N.W.2d at 134. He must show that the allegedly unconstitutional feature of the statute (which in this case is the fact that it permits a person to be convicted solely on the basis of innocent conduct), injures him. See *United States v. Herrera,* 584 F.2d 1137 (2d Cir.1978). In other words, Morris must show that he was convicted of simple possession solely on the basis of his innocent act of being present in a vehicle which contained a controlled substance.

Morris cannot make this showing. The undisputed evidence is that Morris was an occupant of a van in which marijuana was found in plain view. He was shown to be the person who occupied the passenger's seat which was exactly next to the console/dash area where the marijuana was observed in open view. These facts certainly do not show that Morris's conduct was innocent; to the contrary, they permit the inference that he knew of the presence of the marijuana.

Where the feature which allegedly makes a statute unconstitutional is not shown to exist in the case of the party challenging the statute, then he is in effect arguing the unconstitutionality of the statute on the ground that it is unconstitutional as applied to others. If the statute as applied to Morris is constitutional, he will not be heard to say that it is unconstitutional as applied to others. See *Rippley, supra,* 319 N.W.2d at 134; *State v. Gamble Skogmo, Inc.,* 144 N.W.2d 749 (N.D.1966); *State v. Wilson,* 95 Wash.2d 828, 631 P.2d 362 (1981). Morris has not shown that Section 19–03.1–23(3) is unconstitutional as applied to him; therefore, we do not consider his argument that it is unconstitutional when applied to individuals who violate the law without any calculated or conscious wrongdoing.

We affirm the judgments of conviction against Wanner and Morris.

ERICKSTAD, C.J., and PEDERSON, PAULSON and SAND, JJ., concur.