FILED
COURT OF APPEALS
DIVISION II

2014 APR 29 AM 8: 44

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43898-4-II |
| Respondent, | |
| v. | |
| CLAYBORN NMI JONES, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Clayborn Jones appeals his conviction of unlawful possession of a controlled substance and driving under the influence (DUI). He argues that (1) he received ineffective assistance of counsel when his attorney failed to propose a jury instruction on unwitting possession and (2) the evidence is insufficient to support his DUI conviction. Because counsel's failure to propose an unwitting possession instruction was not prejudicial and because the evidence was sufficient to show that Jones's breath alcohol concentration (BAC) was greater than 0.08 within two hours of driving, we affirm the convictions.

## FACTS

On February 15, 2011, Kitsap County Deputy Sheriff Joseph Hedstrom responded to a request from the Bremerton police to investigate a residential burglary outside the city limits. Hedstrom parked down the street and walked up to the house with his partners. He saw no signs of a burglary from the front of the property, and no one responded when Hedstrom knocked on

the front door. He was attempting to find a phone number for the residence when Jones drove up the driveway.

Deputy Hedstrom greeted Jones and explained why the officers were there. Jones responded that a man had assaulted a woman and asked if he could show the officers some pictures on his cell phone. As Jones spoke, Hedstrom could smell intoxicants. When Jones got out of the car to show Hedstrom his cell phone, his shoes were untied and his pants zipper was down. Jones's speech was slurred and he was hard to understand. Hedstrom asked Bremerton officers to check on the woman at the address Jones provided and continued his conversation with Jones. Jones admitted drinking some beer, but declined to say how much. Hedstrom suspected that Jones was under the influence and summoned a state trooper.

Trooper Jermaine Walker arrived at about 2:30 AM. After Jones performed poorly on five field sobriety tests, Walker concluded that Jones was extremely impaired and arrested him for DUI. Walker searched Jones but did not discover any contraband. He then took Jones to the BAC facility at the Silverdale precinct. Jones gave a breath sample at 4:01 AM that showed his BAC was .093. He gave a second sample at 4:03 AM that showed a BAC of .095.

Trooper Walker then transported Jones to the Port Orchard jail and searched him again pursuant to jail policy. When he stood Jones against the wall with his hands behind his back, Jones reached around into his front pocket. Walker grabbed Jones's hand and a small wooden pipe fell to the floor. Walker could see and smell burnt marijuana on the pipe, and Jones confirmed that he had just taken the pipe from his pocket.

Jones denied that there was anything else in his pocket, but Trooper Walker checked the front coin pocket on Jones's jeans and found a tiny plastic bag containing a white powdery

substance. When Walker asked Jones if it was his methamphetamine, Jones replied, "No. It's cocaine." 2 Report of Proceedings (RP) at 126.

The State charged Jones with possession of a controlled substance (cocaine), DUI, and use of drug paraphernalia. Deputy Hedstrom and Trooper Walker testified to the facts set forth above. A forensic scientist testified that the bag contained cocaine and that the pipe contained cocaine and marijuana residue.

Jones testified that he had gone to see his granddaughter after work and that he might have had some brandy before he arrived home. However, Jones denied being under the influence and maintained that he passed all of his sobriety tests. Jones added that when he got out of the car, he was cold in his short-sleeved shirt and retrieved a coat from the back seat. Although the car belonged to his wife, Jones did not think the coat was hers. When his attorney asked if he knew who owned the coat, Jones replied, "I have got teenagers all over the place. I'm sorry. But I've got 15 people that drive this vehicle." 3 RP at 255. He added that he was wearing slacks that did not have a coin pocket.

Jones explained further that as he was getting out of the trooper's car at the jail, he felt something in his coat pocket and told Walker about it because he was concerned about taking possible contraband into the jail. According to Jones, Walker reached in Jones's pocket, threw him against the car, and told Jones that he got the pipe and bag from Jones's front pocket. Jones denied knowing that the cocaine or the pipe was in his pocket. During closing, his attorney argued that Jones did not possess the baggie of cocaine because he did not know it was in the pocket of the coat he retrieved from his car.

The jury found Jones guilty as charged and found, by special verdict, that he had an alcohol concentration of 0.08 or higher within two hours after driving as shown by a breath test. The trial court imposed concurrent sentences of 10 days in jail, with the remaining jail time suspended.

On appeal, Jones argues that he received ineffective assistance of counsel when his attorney failed to propose a jury instruction on unwitting possession and that the evidence was insufficient to prove that he had a BAC of 0.08 or higher within two hours after driving.

## ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

To prove ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that the deficiency was prejudicial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that defense counsel's performance was not deficient. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To rebut this presumption, a defendant must show the absence of legitimate strategic or tactical reasons for the challenged conduct. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To show prejudice, the defendant must show that but for the deficient performance, there is a reasonable probability that the outcome would have been different. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). Failure on either prong defeats a claim of ineffective assistance. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

To convict Jones of the possession charge, the State had to prove beyond a reasonable doubt that he possessed cocaine. Guilty knowledge and intent are not elements of this crime. *State v. Cleppe*, 96 Wn.2d 373, 379-80, 635 P.2d 435 (1981), *cert. denied*, 456 U.S. 1006 (1982).

To ameliorate the harshness of the crime's strict liability nature, a defendant may assert the affirmative defense of unwitting possession. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004), *cert. denied*, 544 U.S. 922 (2005). An unwitting possession defense requires the defendant to prove, by a preponderance of the evidence, either that he did not know he was in possession of the controlled substance or that he did not know the nature of the substance he possessed. *State v. Staley*, 123 Wn.2d 794, 799-800, 872 P.2d 502 (1994); *State v. Balzer*, 91 Wn. App. 44, 67, 954 P.2d 931, *review denied*, 136 Wn.2d 1022 (1998). Thus, the defense requires a defendant to prove circumstances negating culpability that are "uniquely within his knowledge and ability to establish." *State v. Knapp*, 54 Wn. App. 314, 321, 773 P.2d 134, *review denied*, 113 Wn.2d 1022 (1989); *see also State v. Coristine*, 177 Wn.2d 370, 378, 300 P.3d 400 (2013) (affirmative defense places a burden of proof on the defendant, thus shaping the defense by introducing elements it must prove). A defendant meets his burden of proof by persuading the trier of fact that his claim of unwitting possession is more probably than not true. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 52.01 at 1007 (3d ed. 2008).

Here, even if defense counsel was deficient in failing to seek an instruction on unwitting possession, we find no prejudice on this record. Both Deputy Hedstrom and Trooper Walker testified that when they confronted Jones in the early morning hours of February 15, he was extremely impaired. Hedstrom described Jones's slurred speech and unkempt appearance, and Walker described in detail Jones's very poor performance on five field sobriety tests. Shortly after those tests, Jones's breath tests revealed that he was under the influence of intoxicants.

Walker also described the subsequent search of Jones's pants pocket and Jones's statement that the substance found was cocaine and not methamphetamine.

Despite this evidence, Jones categorically denied being under the influence during his confrontations with Deputy Hedstrom and Trooper Walker, and he testified that he "did great" on all of the field sobriety tests and passed them completely. 3 RP at 246. He described his performance on those tests in some detail, but when defense counsel asked whose coat he removed from the car, he declined to answer directly and replied that 15 people drive the vehicle.

Jones also testified that he boards a ferry to go to work every morning at 6:20 and that he had driven straight from the ferry after work to his granddaughter's residence before arriving home. Deputy Hedstrom described the weather as being clear and cold. Thus, even if the cocaine came from his coat rather than his pants, as Jones claims, it seems implausible that he would not have had his coat with him when he left for work on a cold February morning dressed in a short-sleeved shirt.

Jones was the only defense witness. He had difficulty in responding directly to many of defense counsel's questions, and the State chose not to cross-examine him. Based on the record before us, we cannot conclude that the trial's result probably would have differed had defense counsel requested and obtained an unwitting possession instruction. Accordingly, Jones's claim of ineffective assistance of counsel fails.

B. SUFFICIENCY OF THE EVIDENCE

Jones also argues that the evidence was insufficient to prove that he had a BAC of 0.08 or higher within two hours of driving and that dismissal of his DUI conviction is required. We disagree.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A person is under the influence of intoxicating liquor or any drug if the person has a BAC of 0.08 or higher within two hours after driving. RCW 46.61.502(1)(a).[1] Jones argues that under RCW 46.61.502(1)(a), his breath test had to occur within two hours of his driving to constitute evidence that he was driving under the influence. He makes this argument even though RCW 46.61.502(4)(a) states that breath samples obtained more than two hours after the alleged driving may be used as evidence that within two hours of the alleged driving, a person had a BAC of 0.08 or more. Jones acknowledges this provision but contends that it is satisfied only through the introduction of expert testimony regarding retrograde extrapolation, which is a mathematical formula for estimating a person's pretest alcohol concentration given that person's later verified alcohol concentration. *State v. Wilbur-Bobb*, 134 Wn. App. 627, 632, 141 P.3d 665 (2006).

Jones cites no authority to support his claim that expert testimony is required to admit evidence under RCW 46.61.502(4)(a), and we agree with the State that the statute includes no

---

[1] The legislature amended RCW 46.61.502 in 2013. LAWS OF 2013, ch. 3, § 33. Because the amendments do not materially affect our analysis, we refer to the current statute.

such requirement. *See* 32 LINDA M. CALLAHAN, WASHINGTON PRACTICE: WASHINGTON DUI PRACTICE MANUAL, § 1.4 at 7 (2013-14) (retrograde extrapolation presented by expert testimony may be used to show that breath samples obtained more than two hours after driving are evidence that defendant had BAC of .08 or higher within two hours of driving). Under the clear language of RCW 46.61.502(4)(a), the jury may consider any breath test in combination with the other evidence in deciding whether the defendant had an alcohol concentration of 0.08 or more within two hours of driving. *See State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005) (when statutory language is unambiguous, courts must apply it as written).

The record shows that Jones had nothing to drink after he pulled into his driveway and before he gave the breath samples. *See* RCW 46.61.502(3)(a) (it is an affirmative defense to a DUI that the person consumed a sufficient amount of intoxicating liquor after driving but before the administration of breath tests to cause the alcohol concentration to be 0.08 or more within two hours of driving). Deputy Hedstrom testified that Jones pulled into his driveway shortly after the officers arrived at 1:50 AM. A reasonable jury could have inferred that breath samples taken at 4:01 AM and 4:03 AM showing BAC levels of over 0.09 proved that Jones's BAC level was over 0.08 within two hours of driving. Contrary to Jones's contention, the taking of his breath samples just over two hours after he drove did not render the test results inadmissible to prove that his BAC was above the level at which RCW 46.61.502(1)(a) deemed him to have been driving under the influence. His sufficiency challenge fails.

No. 43898-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, C.J.

_____
Johanson, J.

9