FILED
COURT OF APPEALS
DIVISION II

2014 JUN 10 AM 8: 41

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44167-5-II |
| Respondent, | |
| v. | |
| WHITNEY JEAN WHITED, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Whitney Jean Whited appeals her convictions of unlawful possession of a controlled substance (methamphetamine) and unlawful use of drug paraphernalia, arguing that she received ineffective assistance of counsel when her attorney failed to request a jury instruction on unwitting possession. She also argues that the community custody condition prohibiting her from associating with those who use, sell, possess, or manufacture controlled substances is unconstitutionally vague. Because an unwitting possession instruction would not have changed the trial's result, Whited did not receive ineffective assistance of counsel. And, because the challenged community custody condition is sufficiently clear to give Whited notice of what conduct is prohibited, it is not unconstitutionally vague. Accordingly, we affirm.

## FACTS

Trooper Ryan Santhuff made a traffic stop of a car driven by Joseph Flock. Whited, his girlfriend of two years, was his passenger. During the stop, Flock gave Santhuff permission to search the car and told Santhuff that there was a methamphetamine pipe in the driver's door.

No. 44167-5-II

Santhuff then asked Whited whether she knew of any drugs in the car and whether she used methamphetamine. She said that she had used methamphetamine a few weeks ago, but she was not addicted to it. She gave Santhuff permission to search the purse and clothing she had in the vehicle.

During his search, Trooper Santhuff found a used methamphetamine pipe in the driver's door, a broken methamphetamine pipe in a Crown Royal bag in the glove compartment, a syringe in the center console, and two baggies containing suspected methamphetamine in the car's ashtray. The baggies were underneath some coins. Santhuff also found syringes in a shaving kit behind the driver's seat. He did not find any drugs or paraphernalia in Whited's purse or clothing. Flock stated that the methamphetamine belonged to Whited, but Whited said it was "both of theirs." 1 Report of Proceedings (RP) at 48.

The State charged Whited with possessing methamphetamine and using drug paraphernalia. The parties stipulated at trial that the baggies from the car contained methamphetamine and that the pipes contained methamphetamine residue. Trooper Santhuff and another trooper who was at the traffic stop testified about the evidence seized and the statements made during the stop. Santhuff also testified that Whited referred to the vehicle as "my car." 1 RP at 57.

Whited testified in her own defense. She admitted knowing that Flock was using drugs and that she had used drugs with him, but she denied knowing that drugs were in the car at the time of the stop. She did not remember telling Santhuff that the methamphetamine belonged to her and Flock, and she denied that it belonged to her in any way. Although Whited testified that she and Flock had lived together for a year and a half and that she supported him, she denied

2

having any ownership interest in the car or referring to it as her vehicle. She said she did not drive, but she admitted that she often rode with Flock in his car. On cross-examination, Whited testified that she was "unsure" whether she had told the trooper that the methamphetamine in the car belonged to both her and Flock. 1 RP at 96.

Flock testified that the pipe in the Crown Royal bag was his, but that both he and Whited told the troopers that it was hers. He testified further that although the methamphetamine was his, he and Whited told the troopers that it was Whited's. He admitted that he had never before absolved Whited of responsibility for the methamphetamine or the pipe, but he maintained that he was now telling the truth. Flock added that he and Whited were living in the car at the time of the stop.

The State recalled Trooper Santhuff as a rebuttal witness. Santhuff testified that Flock told him that the methamphetamine and the pipe in the Crown Royal bag belonged to Whited. During his testimony, the State played the videotape of the stop for the jury. As it played, Santhuff pointed out where Whited stated that the methamphetamine belonged to both her and Flock.

In its instructions to the jury, the trial court defined "possession" as follows:

> Possession means having a substance in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance.
> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.
> In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the

immediate ability to take actual possession of the substance, whether the defendant had the capacity to exclude others from possession of the substance, and whether the defendant had dominion and control over the premises where the substance was located. No single one of these factors necessarily controls your decision.

Instruction 10, Suppl. Clerk's Papers at 37.

During closing argument, the State contended that Whited constructively possessed the methamphetamine found in the car. In arguing that she exercised dominion and control over the drugs, the State emphasized Whited's statements in the video about the methamphetamine belonging to both Flock and her, as well as her references to "my car" and her use of the vehicle. 1 RP at 171-74. Defense counsel responded that the videotaped statements were not clear and that any references to "my car" were casual statements that carried no significance because Whited was merely a passenger. 1 RP at 191. Defense counsel also argued that there was no evidence of dominion and control because there was no evidence that Whited knew that Flock had put drugs in the car.

After the jury found Whited guilty as charged, the trial court imposed a first-time offender sentence that included 12 months of community custody. One of the community custody conditions stated as follows:

> The defendant shall not use, possess, manufacture or deliver controlled substances without a valid prescription, not associate with those who use, sell, possess, or manufacture controlled substances and submit to random urinalysis at the direction of his/her [Community Corrections Officer] to monitor compliance with this condition.

Clerk's Papers (CP) at 11. On appeal, Whited challenges this condition, as well as her conviction for possessing methamphetamine.

ANALYSIS

A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Whited argues that she received ineffective assistance of counsel when her attorney failed to propose a jury instruction on the affirmative defense of unwitting possession. Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *State v. McLean*, 178 Wn. App. 236, 246, 313 P.3d 1181 (2013), *review denied*, 179 Wn.2d 1026 (2014). To prove ineffective assistance, a defendant must show (1) that her counsel's performance was deficient and (2) that the deficient performance was prejudicial to defendant's case. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). A failure to satisfy either prong is fatal to a claim of ineffective assistance of counsel. *McLean*, 178 Wn. App. at 246.

When determining whether counsel's performance was deficient, we begin with a strong presumption of counsel's effectiveness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Counsel's performance is deficient if it falls below an objective standard of reasonableness and cannot be characterized as legitimate trial strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 862-63, 215 P.3d 177 (2009). Prejudice occurs when there is a reasonable probability that the trial's result would have differed had the deficient performance not occurred. *Hendrickson*, 129 Wn.2d at 78.

To convict Whited of the possession charge, the State had to prove beyond a reasonable doubt that she possessed methamphetamine. Guilty knowledge and intent are not elements of this crime. *State v. Cleppe*, 96 Wn.2d 373, 379-80, 635 P.2d 435 (1981). To ameliorate the harshness of the crime's strict liability nature, a defendant may assert the affirmative defense of

unwitting possession. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004), *cert. denied*, 544 U.S. 922 (2005). This defense assumes that the State has established a prima facie showing of "possession" and requires the defendant to prove, by a preponderance of the evidence, either that she did not know she was in possession of the controlled substance or that she did not know the nature of the substance she possessed. *State v. Staley*, 123 Wn.2d 794, 799-800, 872 P.2d 502 (1994); *State v. Balzer*, 91 Wn. App. 44, 67, 954 P.2d 931, *review denied*, 136 Wn.2d 1022 (1998). A defendant satisfies her burden of proof by persuading the trier of fact that her claim of unwitting possession is more probably than not true. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 52.01 at 1007 (3d ed. 2008).

As Whited asserts, each party is entitled to have the trial court instruct on its theory of the case if there is evidence to support that theory. *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986). In evaluating whether evidence is sufficient to support an instruction on an affirmative defense, the court must interpret the evidence in the defendant's favor and must not weigh the proof or judge the witnesses' credibility. *State v. May*, 100 Wn. App. 478, 482, 997 P.2d 956, *review denied*, 142 Wn.2d 1004 (2000). The affirmative defense of unwitting possession "must be considered in light of all the evidence presented at trial, without regard to which party presented it." *State v. Olinger*, 130 Wn. App. 22, 26, 121 P.3d 724 (2005), *review denied*, 157 Wn.2d 1009 (2006).

Whited testified that she did not know the drugs were in the car, and she denied having any ownership interest in the car. In addition, Flock claimed exclusive ownership of the drugs. Because this evidence was sufficient to support an instruction on unwitting possession and there is no legitimate trial tactic evident on the record before us to support a decision to not request

such an instruction, defense counsel was deficient in failing to propose such an instruction.

But, based on the record, we do not see that this deficiency resulted in prejudice. There was strong evidence that Whited exercised dominion and control over the car and the methamphetamine it contained. *See State v. Brett*, 126 Wn.2d 136, 200, 892 P.2d 29 (1995) (given the weight of the evidence supporting premeditation, defendant failed to show reasonable probability that the inclusion of a voluntary intoxication instruction would have changed the outcome of the proceedings), *cert. denied*, 516 U.S. 1121 (1996). Whited told Trooper Santhuff that the methamphetamine belonged to both her and Flock, and Flock told the trooper that the methamphetamine was Whited's. Although Flock later testified at trial that the methamphetamine belonged to him, he admitted that he was then claiming ownership for the first time and only after his own charges had been resolved. Whited testified that she was unsure whether she had admitted to joint ownership of the methamphetamine, but her admission was recorded, as were her references to the vehicle as "my car." 1 RP at 57, 171-74. Flock's testimony that he and Whited were living in the car at the time of the stop supported the State's theory that they shared possession of the drugs in the car. We see no reasonable probability that an instruction on unwitting possession would have changed the trial's result, and we reject Whited's claim of ineffective assistance of counsel.

B.      COMMUNITY CUSTODY CONDITION

Whited also argues that the community custody condition prohibiting her from associating with those "who use, sell, possess, or manufacture controlled substances" is unconstitutionally vague. CP at 11.

A trial court has discretion to order an offender to refrain from contact with a specified class of individuals during community custody. RCW 9.94A.703(3)(b). Such discretionary conditions will be reversed only if their imposition is manifestly unreasonable. *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). The imposition of an unconstitutional condition is manifestly unreasonable. *Valencia*, 169 Wn.2d at 792.

In challenging a condition of community custody, as opposed to a statute or ordinance, the challenger does not have to overcome a presumption of constitutionality. *Valencia*, 169 Wn.2d at 792. A sentencing condition is not a law enacted by the legislature and does not have the same presumption of validity. *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). Nor does the challenger need to demonstrate that the condition has been enforced; a pre-enforcement challenge that turns on a question of law is ripe for review. *Bahl*, 164 Wn.2d at 752.

The due process vagueness doctrine under the state and federal constitutions requires that citizens have fair warning of proscribed conduct. *Bahl*, 164 Wn.2d at 752 (citing WASH. CONST. art I, § 3; U.S. CONST., amend. XIV). A sentencing condition is unconstitutionally vague if it does not define the proscribed conduct with sufficient definiteness that ordinary people can understand what is prohibited. *Bahl*, 164 Wn.2d at 752-53. The requirement of sufficient definiteness does not demand impossible standards of specificity or absolute agreement concerning a term's meaning; some amount of imprecision in the language is allowed. *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992); *see also City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988) (statute is not unconstitutionally vague merely because person cannot predict with complete certainty the exact point at which his actions would be classified as

prohibited conduct). And, in deciding whether a term is unconstitutionally vague, it is considered in the context in which it is used. *Bahl*, 164 Wn.2d at 754.

Whited contends that the order that she "not associate with those who use, sell, possess, or manufacture controlled substances" is similar to a condition that was found unconstitutionally vague in *Valencia*. There, the defendant was ordered not to possess or use "any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances." *Valencia*, 169 Wn.2d at 785. The Supreme Court held that the reference to "any paraphernalia" failed to provide fair notice of what the petitioners could and could not do and also failed to protect against arbitrary enforcement. *Valencia*, 169 Wn.2d at 794-95.

While acknowledging that the term "controlled substance" is defined by statute, Whited contends that the language at issue is unconstitutionally vague because many controlled substances have legitimate medical uses. She argues that the condition puts her at risk of violation if she associates with a person who, unbeknownst to her, uses a legitimate, medically prescribed controlled substance for a medical purpose. Whited also argues that this condition prevents her from visiting a pharmacy to pick up a needed prescription.

The State responds that the language Whited challenges must be read as part of the broader condition that also prohibits her from using, possessing, manufacturing, or delivering controlled substances without a valid prescription. The State contends that when the additional language prohibiting Whited from associating with those who use, sell, possess or manufacture controlled substances is read in context, it dictates only that her association with illegal substances and the abusers thereof is prohibited.

No. 44167-5-II

We agree with the State that when the challenged language is read in context, ordinary people can understand what is prohibited. Any imprecision is not likely to expose Whited to arrest, but if it does, she can explain that she was picking up a prescription at the pharmacy or visiting a friend who had a medically prescribed controlled substance. *See State v. Llamas-Villa*, 67 Wn. App. 448, 455-56, 836 P.2d 239 (1992) (rejecting similar challenge after noting that if the defendant was arrested for violating the condition, he would have an opportunity to assert that he was not aware that the individuals with whom he had associated were using, possessing, or dealing drugs).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, P.J.

Maxa, J.

10