IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32824-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARL KEITH MATHENY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — In this appeal, Carl Matheny challenges his convictions for

possession of a controlled substance, possession of a dangerous weapon, and driving

while license suspended. He primarily argues that the court erred in admitting evidence

that after arrest he was covered with powdered Viagra and in denying his request for a

Drug Offender Sentencing Alternative. We affirm.

## FACTS

Mr. Matheny was stopped for a traffic infraction and immediately got out of the car

and told the officer that he was going to jail. Corporal Schwarder of the Benton County

Sheriff's Office arrested him after learning that Matheny's driver's license had been

suspended. A search incident to the arrest revealed a butterfly knife and a hollow portion

of a pen. Field testing disclosed the presence of methamphetamine residue in the pen.

Mr. Matheny was placed in the back of a patrol car and driven to the Benton County Jail. When removing Mr. Matheny from the car, Corporal Schwarder noticed white residue on the back seat and on Mr. Matheny's hands. The corporal gathered as much of the material as he could. Testing later identified the powder as Viagra.

The noted charges were filed and the matter proceeded to jury trial. Defense counsel moved to exclude evidence of the white powder, arguing that it had not been tested. The prosecutor indicated that the powder had been tested and determined to be Viagra. Defense counsel noted that Viagra was not a controlled substance and might confuse the jury. The prosecutor subsequently argued that the Viagra was admissible to show that Mr. Matheny was "secreting something" on his person. Defense counsel responded that it was not relevant and that it had "prejudicial value." The trial court permitted the testimony.

Mr. Matheny testified in his own defense that he had picked up the pen at a friend's house and removed it so that little kids would not pick it up. He knew that the pen had been used for drugs, but did not know there was any residue in the pen. Without objection from either party, the court instructed the jury on the defense of unwitting possession. The instruction placed the burden on the defendant to prove unwitting possession by a preponderance of the evidence. Clerk's Papers (CP) at 21. Neither counsel examined Mr. Matheny about the powder.

The prosecutor did not address the Viagra evidence until rebuttal argument. There he told the jury that "the one thing you can conclude" from the Viagra "is that the defendant was secreting something on his person." Report of Proceedings (RP) at 133. Unable to destroy the pen, he destroyed the Viagra.

The jury convicted the defendant as charged. Armed with a supportive evaluation from a chemical dependency evaluator, Mr. Matheny sought a Drug Offender Sentencing Alternative (DOSA). The court rejected the request, stating "I don't think he's ready for treatment. He doesn't want treatment." RP at 162. The court noted that Mr. Matheny had denied that he had a drug problem and claimed to be acting the hero rather than acknowledging his drug problem. A standard range term was imposed.

Before imposing sentence, the court heard from the defendant and his counsel. The defense indicated that Mr. Matheny had worked as a smoke jumper and a mechanic, but would soon be reporting to prison upon the issuance of the mandate in the appeal of an earlier conviction. The court then imposed legal financial obligations (LFOs) totaling $3,070.[1] That figure included $1,170 in discretionary costs and a $1,000 fine.[2] The court

---

[1] Erroneously tallied as $3,570 in the judgment. CP at 109. The judgment form notes assessed amounts of $500, $1,370, $1,000, $100, and $100; those figures total $3,070. The total should be corrected by the trial court.

[2] The context of the sentencing discussion suggested this was a VUCSA fine, but that box on the judgment and sentence form is not checked, nor is the deferral box checked. CP at 109. If error, this also should be corrected by the trial court.

initially indicated it was imposing a "mandatory" $2,000 fine, but reduced it to $1,000 at defense request due to financial hardship that included the fines imposed in the other case.

Mr. Matheny then timely appealed to this court.

## ANALYSIS

Mr. Matheny presents four arguments in support of his appeal. He contends that the court erred in admitting the powdered Viagra evidence, erroneously instructed the jury on the burden of proof concerning unwitting possession, erred in ordering the discretionary LFOs without adequate consideration of his finances, and erred in not granting a DOSA. We address those four concerns in the order indicated.

*Powdered Viagra Evidence*

Mr. Matheny first argues that the court erred in admitting the powdered Viagra evidence in violation of both ER 401 and ER 404. We agree that the evidence was not relevant, but also conclude any error was harmless.[3]

ER 401 provides in part that evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable." Evidentiary rulings are reviewed for abuse of discretion. *State v. Guloy*, 104 Wn.2d 412, 429-430, 705 P.2d 1182 (1985). "In close cases, the balance must be tipped in favor of the defendant." *State v. Wilson*, 144 Wn. App. 166, 177, 181 P.3d 887 (2008).

---

[3] We thus need not decide if ER 404(b) was violated.

4

An erroneous evidentiary ruling is not prejudicial "unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

The prosecutor argued that "secreting" the Viagra was relevant to show that Mr. Matheny also was secreting the pen. We disagree. Whether or not the pen was secreted was determined by its own facts. Here, the pen was found in the defendant's pocket, a typical place for carrying a pen. It does not appear to have been secreted.[4]

Moreover, the purpose of showing that the pen was secreted was to establish the defendant's guilty knowledge of his possession of the methamphetamine. However, the prosecutor had no obligation to prove knowledge. Knowledge only became an issue, as noted in the next section of this opinion, once the defendant contended that his possession was unwitting. The defendant's knowledge was not at issue during the State's case.

We thus believe the court erred in admitting the evidence. However, we do not believe the evidence materially affected the verdict. The charged offense involved the pen found at the time of the arrest, not the powder subsequently discovered in the car. The issue presented for the jury was whether or not Mr. Matheny knew the miniscule amount of the controlled substance was present in the pen. The Viagra evidence was

---

[4] The pen had already been seized and tested before Mr. Matheny undertook to destroy the Viagra, thus strongly suggesting that the purpose of his actions was related to his possession of the Viagra rather than the pen's contents.

very briefly mentioned in argument, and only then in the limited context of whether it showed that Mr. Matheny had also secreted the pen containing the methamphetamine. Mr. Matheny did not testify about the powder. There also is nothing inherently bad about possessing Viagra, a widely advertised substance. In sum, the destruction of the Viagra tablet had nothing to do with the jury's verdict about whether or not Mr. Matheny possessed the methamphetamine.

Accordingly, although it was error to admit the evidence, the powder did not impact the verdict.

*Unwitting Possession Instruction*

Mr. Matheny also argues that the jury instructions improperly placed the burden of proving unwitting possession on the defense. His argument is controlled by binding Washington State Supreme Court precedent to the contrary.[5]

The Washington legislature did not include a knowledge element in the unlawful possession statute. Our court subsequently concluded that the omission was intentional and that a knowledge element should not be read into the statute. *State v. Cleppe*, 96 Wn.2d 373, 635 P.2d 435 (1981). Reviewing the issue a generation later, our court again concluded that *Cleppe* was correctly decided. *State v. Bradshaw*, 152 Wn.2d 528, 98 P.3d

---

[5] We therefore do not address the question of whether Mr. Matheny has established manifest constitutional error that permits him to raise this issue initially on appeal. RAP 2.5(a)(3).

1190 (2004). Those decisions are binding on this court. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

In order to ameliorate the harshness of strict liability, the court created a common law defense of unwitting possession. *Cleppe*, 96 Wn.2d at 381. The defense can be applied either when the defendant does not know he is in possession of a controlled substance or if he did not know the nature of the substance in his possession. *State v. Staley*, 123 Wn.2d 794, 799, 872 P.2d 502 (1994). The burden of proof is on the defendant. *Cleppe*, 96 Wn.2d at 381.

Mr. Matheny now argues that the defense cannot bear the burden of proof on an affirmative defense after *State v. W.R., Jr.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). That decision does not support his position. There the court concluded that the consent defense to rape negates the forcible compulsion element of the crime and that due process therefore requires the State to disprove consent. *Id.* at 765-768.

In contrast to the rape charge at issue in *W.R.*, the affirmative defense of unwitting possession does not negate any element of the crime of possession of a controlled substance. Instead, it involves a judicially-created *excuse* for the offense. Due process does not therefore require that the State disprove a defense that negates an element of the crime. *W.R.* is inapplicable.

The court properly instructed the jury on the defense of unwitting possession.

7

*Legal Financial Obligations*

Mr. Matheny also argues that the trial court erred in imposing significant discretionary LFOs without making the inquiry required by RCW 10.01.160(3). Since the trial court attempted to fulfill its statutory obligations, we conclude that any error is not manifest in light of Mr. Matheny's failure to object and decline to address the merits of the claim.

RCW 10.01.160(3) states:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

The statutory inquiry is required only for *discretionary* LFOs. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (mandatory fees, which include victim restitution, victim assessments, DNA fees, and criminal filing fees, operate without the court's discretion by legislative design); *State v. Kuster*, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013) (victim assessment and DNA collection fee mandatory). Trial courts are not required to enter formal, specific findings. *Lundy*, 176 Wn. App. at 105.

In *Blazina*, our court concluded that the LFO issue is not one that can be presented for the first time on appeal because this aspect of sentencing is not one that demands uniformity. *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015). To that end, the appellate courts retain discretion whether or not to consider the issue initially on appeal.

*Id.* The *Blazina* court then decided to exercise its discretion in favor of accepting review due to the nationwide importance of the general issue concerning LFOs and to provide guidance to our trial courts. *Id.* The court noted that trial judges have a statutory obligation to consider RCW 10.01.160(3) at sentencing and make an individualized determination of the defendant's ability to pay discretionary LFOs. *Id.* at 837.

Mr. Matheny argues that this court likewise should exercise its discretion and remand his case for a new sentencing proceeding. However, he is not situated similarly to the defendants in *Blazina*. There the trial court made no attempt to satisfy its statutory obligations. *Id.* at 831-832. In contrast, here the trial court heard about Mr. Matheny's employability as well as his financial obligations in another case. Using that information, the court reduced the drug fine by 50 percent. He made no similar request concerning his other obligations and did not object to the trial court's ruling.

In these circumstances, we are not convinced that we should exercise discretion to hear this unpreserved error. *Blazina* requires an individualized inquiry into the ability to pay and a consideration of various factors that weigh on that issue. *Id.* at 838. The inquiry in this case probably was not sufficient to satisfy *Blazina*. However, unlike those cases where *no* inquiry was attempted, here the trial court made an effort to satisfy the statute. Given that Mr. Matheny did not object to the trial court's efforts, which did benefit him, we decline to find that there clearly was error below.

Accordingly, we decline to address this issue.

9

*Consideration of DOSA Request*

The final argument presented is a contention that the trial court did not consider a DOSA sentence in retaliation for the defendant exercising his right to a jury trial. This issue, too, is controlled by a factually similar case. We affirm.

The governing law is clear. RCW 9.94A.660(1) contains seven criteria for determining eligibility for a DOSA sentence. If the offender is eligible, the trial court may impose a standard range sentence that is spent half in treatment and half in community custody. RCW 9.94A.660(3); .662; .664. The trial court's decision to grant or deny DOSA is not reviewable. *State v. Grayson*, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005); *State v. Hender*, 180 Wn. App. 895, 900, 324 P.3d 780 (2014). The trial judge has the discretion to determine whether use of the sentencing alternative is appropriate. *Hender*, 180 Wn. App. at 901. However, the trial court abuses its discretion if it does not actually consider the request. *Id.*

Mr. Matheny contends that the trial court did not actually consider his request because he took the case to trial. That view misapprehends the trial court's decision. As noted previously, the trial judge denied DOSA because Mr. Matheny was not forthcoming about his drug problem. The essence of his defense was that the drugs were not his and he had not used the pen to consume the methamphetamine. The trial court was free to understand his trial testimony as refusing to acknowledge that there was a drug problem. It did not have to accept his statements to the treatment evaluator.

10

The trial court faced a similar situation in *Hender*. There the defendant had pleaded guilty to delivering methamphetamine, but denied that methamphetamine had made him a criminal. The trial court rejected the defendant's DOSA request due to the defendant's refusal to accept responsibility for his conduct. 180 Wn. App. at 902. We concluded the opinion with this observation:

> Although many behavioral scientists disagree, many recognize that one who blames others for his wrongs is detached from reality and this detachment interferes in one's ability to benefit from treatment. If a user does not take responsibility for his behavior, he is not likely to be receptive to change in the behavior. Alcohol and drug addiction are common causes of a blaming attitude. Thus, the trial court did not abuse its discretion when concluding that a DOSA sentence does not fit the predisposition of Ronald Hender.

*Id.*

Similarly here, the trial court could conclude from Mr. Matheny's own testimony that he was not taking responsibility for his actions and not acknowledging his problems, thus making him a poor candidate for treatment. Drug treatment should not be wasted on those not ready to make the effort to overcome their problem. Trial judges have the discretion to determine who to trust or not trust. Given the conflicting pronouncements by Mr. Matheny, the trial court had a tenable basis for concluding he was not a good candidate for DOSA at this time. There was no error.

The judgment is affirmed. The trial court is directed to correct the noted scrivener's error(s).

11

No. 32824-4-III
*State v. Matheny*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.