# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| STATE OF WASHINGTON, | No.  46765-8-II |
| --- | --- |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| PHYLLIS HOLMAN, | |
| Appellant. | |

BJORGEN, C.J. — Phyllis Holman appeals her conviction and sentence for possession of

methamphetamine.  She argues that her conviction was unconstitutional because the statute

defining the crime, RCW 69.50.4013,[1] imposes criminal liability and felony punishment without

any mens rea (mental state) requirement, subject only to an affirmative defense of unwitting

possession.  She also argues that the State committed prosecutorial misconduct by referring in

closing argument to a lack of evidence and that she received ineffective assistance of counsel

because her attorney did not object to the argument.  In supplemental briefs, Holman argues that

---

[1] RCW 69.50.4013 was amended in 2015.  The amendment does not affect the issues in this
matter.

the trial court erred by imposing discretionary legal financial obligations (LFOs) without first inquiring into her ability to pay and that she should not be assessed costs on appeal.

We hold that (1) the trial court properly instructed the jury that unwitting possession is an affirmative defense for which the defendant bears the burden of proof, (2) under controlling case law, RCW 69.50.4013 does not violate Holman's constitutional right to due process by imposing severe penalties for a strict liability crime, (3) neither does RCW 69.50.4013 impose cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution, (4) the State did not commit prosecutorial misconduct, because its argument was not improper, and (5) Holman did not receive ineffective assistance of counsel, because her attorney's performance was not deficient. We also exercise our discretion to consider Holman's LFO challenge, reverse the imposition of discretionary LFOs, and remand for the trial court to make an individualized inquiry into her ability to pay, consistently with *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015) and RCW 10.01.160(3), before imposing any discretionary LFOs. Finally, we decline to impose appellate costs on Holman. Accordingly, we affirm Holman's conviction, reverse the imposition of discretionary LFOs, and remand for consideration of whether discretionary LFOs should be imposed.

FACTS

On March 15, 2014, Holman brought her sister to her home in Longview, where Holman and her teenage daughter lived. When they arrived, Holman's daughter was hosting 10 to 14 other teenagers. Pursuant to a "house rule," the guests had placed their bags and backpacks near a couch in the living room. Report of Proceedings (RP) at 102-03. Holman put her own bag, a

2

gold-colored tote bag, in the same general area. At some point, Holman's sister saw one of the guests reach down into one of the bags.

Later that day, Holman took her bag and went with her sister to a grocery store at which police were subsequently called to investigate whether Holman was using counterfeit money. An officer asked to search her bag and, after Holman consented, found a substance that appeared to be methamphetamine. The officer arrested Holman and seized the bag. Later chemical analysis revealed that the substance was methamphetamine.

The State charged Holman with possession of methamphetamine in violation of RCW 69.50.4013. The case initially produced a mistrial, but was later retried before a jury.

At trial, Holman and her sister testified that Holman's purse was among some six purses and ten backpacks in Holman's living room. Holman told the jury that all of the purses and backpacks were positioned "[a]t the end of the couch in front of the window" in a "pretty big area." RP at 105, 108. Holman also stated that "[t]here were three [bags] that were gold at the end of the couch." RP at 104. This was the only evidence she presented as to her bag's location and the relative proximity of the couch and the other bags.

Holman proposed an instruction on the defense of unwitting possession. That instruction, which the trial court gave to the jury as instruction 9, read:

> A person is not guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person did not know that the substance was in her possession.
> The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.

Clerk's Papers (CP) at 16. Holman's case was focused on establishing this defense. She argued

that the jury could infer that the guest whom Holman's sister saw reach into a bag may have

placed the methamphetamine in Holman's bag without Holman's knowledge.

In closing argument, the State addressed unwitting possession, directing the jury's

attention to the testimony regarding the bag's location:

> [T]he area of this – of the area, sort of the jail for the purses, we've got the couch
> here going this way, and we've got an area from here to here where these, I believe,
> ten backpacks and six purses are being kept. And the couch is over here. Now
> we've heard that when they came in everything was orderly, everything was placed.
> This wasn't just a huge jumbled pile, that everything was kind of set out
> nicely. . . . Now, there's no testimony of where the Defendant's bag was. We've
> got the couch here, we have no idea *in this space* where her bag was. There was no
> evidence about that. Was her bag here? And the teenager over here flopped her
> arm down and put something in there? We have no idea. We have no idea whether
> the other three gold bags were even close to the Defendant's bag. There's no
> evidence about that either.

RP at 133 (emphasis added). Holman did not object to this argument.

The jury found Holman guilty as charged. The trial court sentenced her to five days in

prison and imposed LFOs amounting to $2,275. Holman asked the court to waive a $1,000 fine

against her but did not object to the imposition of any other LFOs.

Holman appeals her conviction and sentence.

ANALYSIS

I. CONSTITUTIONAL CHALLENGES

Holman challenges the constitutionality of her conviction on two different grounds,

arguing that the trial court violated her Fourteenth Amendment right to due process and her

Eighth Amendment right to be free from cruel and unusual punishment. We hold that Holman

has shown no such violations. U.S. CONST. amend. VIII, XIV.

We review constitutional challenges de novo. *State v. Beaver*, 184 Wn.2d 321, 331, 358 P.3d 385 (2015). However, where our Supreme Court has previously resolved constitutional questions, that resolution binds us. *State v. Pedro*, 148 Wn. App. 932, 950, 201 P.3d 398 (2009).

1.     Due Process

Holman argues that the trial court violated her Fourteenth Amendment right to due process by (1) improperly shifting the burden of proof and (2) imposing felony punishment for a strict liability crime. We disagree.

A.     Improper Burden Shifting

Holman argues that requiring her to bear the burden of establishing the unwitting possession defense violated her constitutional right to due process by shifting the burden of proof as to an element of the crime. However, this argument is directly contrary to controlling case law, including *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004) and *State v. Cleppe*, 96 Wn.2d 373, 380, 635 P.2d 435 (1981). We hold that Holman has not raised a meritorious argument in light of that controlling law.

A criminal defendant may not bear the burden of proof on any element of a charged crime, and the legislature violates a defendant's constitutional right to due process by imposing such a burden. *State v. W.R., Jr.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014). Where a defendant raises an affirmative defense that negates an element of a crime, the defendant need not establish more than a reasonable doubt as to his guilt. *Id*. at 762. However, the legislature may assign to the defendant the burden of proving an affirmative defense "when the defense merely 'excuses[s] conduct that would otherwise be punishable.'" *Id.* at 762 (internal quotation marks omitted) (quoting *Smith v. United States*, ___ U.S. ___, 133 S. Ct. 714, 719, 184

L. Ed. 2d 570 (2013)). "The key to whether a defense necessarily negates an element is whether the completed crime and the defense can coexist." *W.R.*, 181 Wn.2d at 765.

A defendant charged with possession of a controlled substance under RCW 69.50.4013 may assert as an affirmative defense that she unwittingly possessed the substance, either because she did not know she possessed it or because she was unaware of the nature of the substance. *City of Kennewick v. Day*, 142 Wn.2d 1, 11, 11 P.3d 304 (2000). In *Cleppe*, our Supreme Court addressed this unwitting possession defense and concluded that it

> ameliorates the harshness of the almost strict criminal liability our law imposes for unauthorized possession of a controlled substance. If the defendant can affirmatively establish his "possession" was unwitting, then he had no possession *for which the law will convict*. The burden of proof, however, is on the defendant.

96 Wn.2d at 380-81 (emphasis added). Under *Cleppe*, the defense excuses, but does not negate, the fact of possession. More than 20 years later, our Supreme Court reaffirmed this holding in *Bradshaw*:

> The State has the burden of proving the elements of unlawful possession of a controlled substance as defined in the statute—the nature of the substance and the fact of possession. Defendants then can prove the affirmative defense of unwitting possession. This affirmative defense ameliorates the harshness of a strict liability crime. It does not improperly shift the burden of proof.

152 Wn.2d at 538 (internal citations omitted).

Holman argues that the defense of unwitting possession negated an element of the crime in this case because she was charged with possession of methamphetamine on a constructive possession theory. To show constructive possession of an item, the State must establish that the defendant had dominion and control over that item. *State v. Ibarra-Cisneros*, 172 Wn.2d 880, 897, 263 P.3d 591 (2011). "Dominion and control means that the object may be reduced to actual possession immediately." *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002).

6

Actual possession, in contrast, is defined as "personal custody" over an item. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969).

Holman states, without citation to authority, that "[a] person cannot exercise dominion and control over an item s/he does not know exists." Br. of Appellant at 7. However, while knowledge of an item may weigh toward a finding of dominion and control over that item, such knowledge is neither necessary nor sufficient to establish dominion and control. *See, e.g.*, *State v. Collins*, 76 Wn. App. 496, 501, 886 P.2d 243 (1995); *State v. Dobyns*, 55 Wn. App. 609, 615, 779 P.2d 746 (1989). One may exercise dominion and control over something without having actual knowledge of its existence. *See Cleppe*, 96 Wn.2d at 377-81. For example, a person could exercise dominion and control over a bag filled with contraband even if the person was unaware of the contraband, as long as the person could immediately reduce the bag to actual possession by taking it into personal custody. By taking personal custody of the bag and its contents, the person would take actual possession of the contraband. Accordingly, evidence that a defendant lacks knowledge of an item does not negate the possibility the defendant constructively possessed that item. *See Callahan*, 77 Wn.2d at 29-30. A finding of constructive possession therefore may coexist with the unwitting possession defense. *See Cleppe*, 96 Wn.2d at 377-81; *Callahan*, 77 Wn.2d at 32.

Our case law is clear: the State does not bear the burden of disproving unwitting possession. *Bradshaw*, 152 Wn.2d at 538. The defendant bears that burden, and must establish the defense by a preponderance of the evidence. *Id.*; *Cleppe*, 96 Wn.2d at 381.

      B.      Strict Liability

Holman argues that RCW 69.50.4013 violates her right to due process, because it imposes felony punishment for a strict liability crime. In accord with our recent holding on the issue in *State v. Schmeling*, No. 46218-4-II, 2015 WL 8925818 (Wash. Ct. App. Dec. 15, 2015), we disagree.

The legislature may create strict liability crimes, but this prerogative is subject to due process limits. *State v. Warfield*, 119 Wn. App. 871, 876, 80 P.3d 625 (2003). In general, imposing severe punishment for strict liability crimes can violate a defendant's constitutional right to due process. *See, e.g.*, *United States v. Wulff*, 758 F.2d 1121, 1125 (2nd Cir. 1985).

However, our Supreme Court has upheld the constitutionality of RCW 69.50.4013, holding that the unwitting possession defense "ameliorates the harshness" of imposing felony punishment without requiring the State to prove a mens rea. *Bradshaw*, 152 Wn.2d at 533, 538; *Cleppe*, 96 Wn.2d at 381.[2] We expressly held in *Schmeling* that the statute therefore survives a due process challenge. 2015 WL 8925818, at *6-7. While the possibility still remains that a defendant could in fact be convicted for unwitting possession simply because she was unable to meet her burden of proof, the defendant has an opportunity to show that the possession was unwitting and therefore innocent. "[T]he defense must be allowed in order to avoid an unjust conviction, but the defendant bears the burden of proving it." *State v. Deer*, 175 Wn.2d 725,

---

[2] The United States Supreme Court denied certiorari in both *Bradshaw and Cleppe.* 152 Wn.2d 528, *cert. denied*, 44 U.S. 922 (2005); *Cleppe*, 96 Wn.2d 373, *cert. denied*, 456 U.S. 1006 (1982).

735, 287 P.3d 539 (2012). Under *Cleppe*, *Bradshaw*, and *Schmeling*, imposing this burden on Holman did not offend due process.

2.      Cruel and Unusual Punishment

Holman argues that RCW 69.50.4013 imposes cruel and unusual punishment by imposing a punishment that is categorically disproportionate to the crime committed. Again in accord with *Schmeling*, we disagree.

"To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society.'" *Graham v. Florida*, 560 U.S. 48, 58, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). A punishment that is inherently disproportionate to the crime committed may be categorically barred by the Eighth Amendment. *Graham*, 560 U.S. at 59; *see also State v. Ramos*, 189 Wn. App. 431, 357 P.3d 680 (2015). To assess whether such a categorical prohibition is appropriate, we first look at "'objective indicia of society's standards, as expressed in legislative enactments and state practice'" to determine whether there is a "national consensus" against imposing the punishment. *Graham*, 560 U.S. at 61 (quoting *Roper v. Simmons*, 543 U.S. 551, 572, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)). If such a consensus exists, we then look to "'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose.'" *Id*. (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 421, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008)).

As we held in *Schmeling*, the categorical approach is inapplicable and imposing felony sanctions for possession of a controlled substance without a mens rea requirement does not constitute grossly disproportionate punishment. 2015 WL 8925818 at *2-3. That holding disposes of Holman's argument. RCW 69.50.4013 does not violate Holman's Eighth Amendment right to be free from cruel and unusual punishment.

## II. PROSECUTORIAL MISCONDUCT

Holman argues that the State committed prosecutorial misconduct by testifying to facts not in evidence. We hold that the prosecutor did not testify to any facts and did not argue improperly.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We examine the prosecutor's conduct and whether prejudice resulted from it by considering the evidence presented, the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

"Proper and timely objections provide the trial court an opportunity to correct the misconduct and caution jurors to disregard it." *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015). Accordingly, a defendant who failed to object to alleged prosecutorial misconduct before the trial court is deemed to have waived any error unless the misconduct was so flagrant and ill-intentioned that an instruction from the trial court could

not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. Therefore, to prevail on her prosecutorial misconduct claim for conduct to which she did not object below, Holman must show that (1) the prosecutor's conduct was improper, (2) no curative instruction would have eliminated its prejudicial effect, and (3) the improper conduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id.*

It is improper for a prosecutor to argue facts not in evidence. *State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012). However, it is not improper for a prosecutor to mention that evidence is lacking, as long as the prosecutor does not mischaracterize the burdens of proof. *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009).

According to Holman, "[r]ather than arguing that Ms. Holman's evidence was insufficient to prove unwitting possession, the prosecutor chose to claim that Ms. Holman's evidence did not exist at all." Br. of Appellant at 13. Viewed entirely out of context, some of the prosecutor's words do appear to convey that Holman presented no evidence at all of the bag's location. *See, e.g.*, RP at 133 ("Now, there's no testimony of where the Defendant's bag was."). But considered in context, it is clear that the prosecutor was actually arguing that Holman failed to produce evidence establishing the *relative* location of her bag. *See, e.g.*, RP at 133 ("We've got the couch here, we have no idea in this space where her bag was."). This argument accurately characterized the evidence before the jury, and the prosecutor did not claim that Holman failed to produce evidence that she did in fact produce. The prosecutor pointed out that the testimony did not establish the particular position of Holman's own bag in relation to the couch or among the different bags near the couch. This argument accurately reflected the testimony presented. The prosecutor's argument was not improper, and therefore the State did

not commit prosecutorial misconduct. Because we hold that the argument was not improper, we need not decide whether any resulting prejudice could have been cured had Holman objected.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Holman argues that she received ineffective assistance of counsel because her attorney failed to object to the prosecutor's argument regarding the lack of evidence. Because we hold that the argument was not improper, Holman's attorney was not ineffective for failing to object.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on such a claim, the defendant must show that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. We presume that counsel's performance was not deficient. *Id.* at 33. The defendant may rebut this presumption by showing that the performance was not a matter of legitimate trial strategy or tactics. *Id.*

The failure of Holman's attorney to object during closing argument was not deficient because the prosecutor's argument was not improper, and Holman's attorney may have preferred not to emphasize gaps in the evidence by objecting to the argument.

> "Defense counsel's failure to object to a prosecutor's closing argument will generally not constitute deficient performance because lawyers 'do not commonly object during closing argument absent egregious misstatements.'"

*In re Pers. Restraint of Cross*, 180 Wn.2d 664, 721, 327 P.3d 660 (2014) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 717, 101 P.3d 1 (2004)). Moreover, defense counsel may legitimately decide not to object where the objection would emphasize unfavorable aspects of trial testimony. *State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013), *review denied*, 179 Wn.2d 1026 (2014). Because the prosecutor's argument

12

was not improper, there was no basis for objection. Yet even if the argument had been improper, Holman's attorney may have legitimately preferred not to emphasize the limits of the testimony regarding the bag's location and refocus the prosecutor's argument toward a more precise formulation of those limits. Accordingly, we hold that the decision not to object did not constitute deficient performance, and therefore that Holman did not receive ineffective assistance of counsel.

## IV. IMPOSITION OF LFOS

In her supplemental briefing, Holman argues that the trial court erred by imposing LFOs without making an individualized inquiry into her ability to pay, as required by *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015). In *State v. Lyle*, 188 Wn. App. 848, 850, 355 P.3d 327 (2015),[3] *remanded*, 365 P.3d 1263 (2016), the majority opinion held that a defendant sentenced after we issued our decision in *State v. Blazina*, 174 Wn. App. 906, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827 (2015), waives this challenge by not raising it in the trial court. Holman was sentenced after our 2013 decision in *Blazina* and did not raise her individualized inquiry challenge in the trial court.

However, in light of the Supreme Court's recent order granting the petition for review in *State v. Lyle*, ___ Wn.2d ___, 365 P.3d 1263 (2016), and its opinion in *State v. Marks*, No. 91148-7, 2016 WL 743944, at *1 (2016), we elect to exercise our discretion whether to reach such challenges when not raised in the trial court.

The State argues that as a sentencing tactic Holman requested that LFOs be imposed instead of jail time and that the trial judge, in acknowledgment of that, struck the fine, imposed

---

[3] Bjorgen, A.C.J., dissented.

only five days in jail, and considered Holman's financial situation in doing so. The only element of the record that could support this contention is defense counsel's statement that "[t]here's certainly a number of penalties, including the fines and other ramifications of a felony conviction that she's going to have to contend with." RP at 168. Given the absence of any reference to LFOs or costs other than the fine, and given the ample nonfinancial "ramifications of a felony conviction," this cannot reasonably be taken as an acceptance of the LFOs by Holman.

Related to the State's argument is its contention that Holman's attorney asked the court "to consider her financial circumstances and the fact that the fines and costs would be punishment enough." Suppl. Br. of Resp't at 1 (citing RP 170). This, though, is not what the record shows. Instead, Holman's attorney urged that "the fines alone are—are certainly a significant penalty for someone in Ms. Holman's situation." RP at 170. Then, after a discussion that did not include any examination of Holman's financial circumstances or ability to pay, the court stated: "I'm striking the $1,000.00 fine. There's other financial obligations that you'll be in charge of Ms. Holman." RP at 172. The record thus makes clear that Holman did not request imposition of LFOs, strategically or otherwise, and that the trial court did not make the individualized inquiry into her ability to pay required by *Blazina* before imposing discretionary LFOs.

The trial court found Holman indigent at the end of the proceeding. Although present indigency does not necessarily show inability to pay in all situations, our Supreme Court recognized in *Blazina* that if someone does meet the GR 34 standard for indigency, "courts should seriously question that person's ability to pay LFOs." *Blazina*, 182 Wn.2d at 839. At the

14

least, this recognition shows that the need for an individualized inquiry into ability to pay is heightened under *Blazina* when the defendant is indigent.

In *Blazina* the court remanded for an individualized determination, even though the defendants had not objected below, because it found that the pernicious consequences of "broken LFO systems" on indigent defendants "demand" that it reach the issue. 182 Wn.2d at 830, 833-34. Those same consequences face Holman, another indigent defendant. Although her present indigency does not necessarily mean that Holman is or will be unable to pay her LFOs, it does mean under *Blazina* that the trial court must assess her ability to pay in the individualized manner the Supreme Court requires. The trial court failed to make that individualized determination. Accordingly, we exercise our discretion and remand to the trial court for reconsideration of the discretionary LFOs consistent with RCW 10.01.160(3) and *Blazina*, 182 Wn.2d at 838-39.

## V.  APPELLATE COSTS

Holman also filed a supplemental brief contending that, if the State substantially prevails in this appeal, we should decline to impose appellate costs on her because she is indigent. The State argues in response that because it has not attempted to recoup any appellate costs, the issue raised by Holman is not ripe for review. We exercise our discretion and decline to impose appellate costs on Holman.

Under RCW 10.73.160(1), we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, ___ P.3d ___ (2016). Holman's request is effectively that we exercise that discretion and limit the commissioner's duty to impose costs should the State

substantially prevail. As such, it is not unripe. *See* RAP 14.2 (allowing this court to exercise its discretion regarding costs awards in its decision terminating review).

Ability to pay is an important factor in the exercise of that discretion, although it is not the only relevant factor. *Sinclair*, 192 Wn. App. at 389. In the context of trial court LFOs, our Supreme Court has recognized that if one meets the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs. *Blazina*, 182 Wn.2d at 839. Once indigency is established, the Rules of Appellate Procedure establish a presumption of continued indigency throughout review. *Sinclair*, 192 Wn. App. at 393. Specifically, RAP 15.2(f) states that

> [a] party and counsel for the party who has been granted an order of indigency must bring to the attention of the trial court any significant improvement during review in the financial condition of the party. The appellate court will give a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent.

Holman was 53 years old and was found indigent at the end of trial. No information has been brought to our attention rebutting the presumption of Holman's continued indigency. In considering appellate costs, *Sinclair* held, as a general matter, that "the imposition of costs against indigent defendants raises problems that are well documented in *Blazina*—*e.g.*, 'increased difficulty in reentering society, the doubtful recoupment of money by the government, and inequities in administration.'" *Sinclair*, 192 Wn. App. at 391 (quoting *Blazina,* 182 Wn.2d at 835). With Holman's presumed continued indigency, the imposition of appellate costs would threaten these same evils. Therefore, we exercise our discretion and decline to impose appellate costs on Holman.

No. 46765-8-II

## CONCLUSION

We affirm Holman's conviction, reverse the imposition of discretionary LFOs, and remand for an individualized determination of Holman's current and future ability to pay discretionary LFOs consistently with *Blazina* and RCW 10.01.160(3). We decline to impose costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

Melnick, J.

MELNICK, J.

Sutton, J.

SUTTON, J.